Fuld, J.
This'appeal is-concerned with the effect in New York of an agreement made in another State for the support of a child horn out of wedlock. ' • '
' The complainant Dorothy Haag alleges that in 1947 she moved from Minnesota "and took'up residence in New-York City and that since then she has been 'a resident of this -State. The defend *557 ant Norman Barnes, on the other hand, is now and was, during the period involved in this litigation, a resident of Illinois.
According to the statements contained in the complainant’s affidavits, she met the defendant in the spring of 1954 in New York. She was a law secretary and had been hired by the defendant through an agency to do work for him while he was in New York on one of his business trips. The relationship between the man and the girl soon “ ripened into friendship ” and, on the basis of representations that he loved her and planned to divorce his wife and marry her, she was “ importuned ” into having sexual relations with him.
The complainant further alleges that she became pregnant as a result of having sexual relations with the defendant and that, upon being informed of this, he asked her to move to Illinois to be near him. She refused and, instead, went to live in California with her sister to await the birth of her child. Fearing that the defendant was losing interest in her, however, she returned to Chicago before the child was born and, upon attempting to communicate with the defendant, was referred to his attorney. The latter told Dorothy to choose a hospital in Chicago, which she did, and the baby was born there in December, 1955, the defendant paying the expenses.
Shortly after the birth of the child, her attempts to see the defendant in New York failed and she was advised by his attorney to return to Chicago in order that an agreement might be made for the support of her and her child. Returning to that city, she procured an attorney, recommended by a friend in New York, and signed an agreement on January 12, 1956. The agreement provides, in pertinent part, as follows:
1. It recites payment to the complainant by the defendant of $2,000 between September, 1955 and January, 1956 and a willingness on his part to support her child in the future, on condition that such payments “shall not constitute an admission” that he is the child’s father;
2. The defendant promises to'pay $50 a week and $75 a month, i.e., a total of $275 a month, “ continuing while [the child] is alive and until she attains the age of sixteen years ’ ’;
3. The complainant agrees 1 ‘ to properly support, maintain, educate, and care for [the child] ’ ’;
*558 4. The complainant agrees to keep the child in Illinois for at least two years, except if she marries within that period;
5. The complainant “ remise [s], release [s] and forever discharge [s] Norman Barxes •* * # from all manner of actions * * * which [she] now has against [him] or ever had or which she * * * hereafter can, shall or may have, for, upon or by reason of any matter, cause or thing whatsoever * * * including *. * * the support of [the child] and
6. The parties agree that their agreement “ shall in all respects be interpreted, construed and governed by the laws of the State of Illinois
Shortly after the agreement was signed, the complainant received permission, pursuant to one of its provisions, to live in California where she remained for two years. She then returned to New York where she and her child have ever since been supported by the defendant in full compliance with the terms of his agreement. In fact, he has provided sums far in excess of his agreement; all told, we were informed on oral argument, the defendant has paid the complainant some $30,000.
The present proceeding was instituted in 1959 by the service of a complaint and the defendant was thereafter arrested pursuant to section 64 of the New York City Criminal Courts Act. A motion, made by the defendant, to dismiss the proceeding was granted by the Court of Special Sessions and the resulting order was affirmed by the Appellate Division.
The ground urged for dismissal was that the parties had entered into an agreement providing for the support of the child which has been fully performed; that in this agreement, the-complainant relinquished the right to bring any action for the support of the child; and that, in any event, the action is precluded ‘ by the laws of the State of Illinois which, the parties expressly agreed, would govern their rights under the agreement. In opposition, the complainant contended that New York, not Illinois, law applies; that the agreement in question is not a sufficient basis for a motion to dismiss under either section 63 of the New York City Criminal Courts Act or section 121 of the Domestic Relations Law, since both of these provisions provide that ‘ ‘ An agreement or compromise made by the mother * * * shall be binding only when the court shall have deter *559 mined that adequate provision has been made ’ ’; and that, even were the Illinois law to apply, it does not bar the present proceeding.
The motion to dismiss was properly granted; the complainant may not upset a support agreement which is itself perfectly consistent with the public policy of this State, which was entered into in Illinois with the understanding that it would be governed by the laws of that State and which constitutes a bar to a suit for further support under Illinois law.
The complainant is correct in her position that, since the agreement was not court approved, it may not be held to be a bar to her suit under New York internal law. (See N. Y. City Grim. Cts. Act, § 63; Domestic Relations Law, § 121.) On the other hand, it is clear that the agreement is a bar under the internal law of Illinois since it provides, in the language of that State’s statute, for a ‘ ‘ sum not less than eight hundred dollars ’ ’. (See Ill. Rev. Stat., former ch. 17, § 18, amd. by former ch. 17, § 52 [now ch. 106%, § 65].) The simple question before us, therefore, is whether the law of New York or of Illinois applies.
The traditional view was that the law governing a contract is to be determined by the intention of the parties. (See Wilson v. Lewiston Mill Co., 150 N. Y. 314, 322-323; Stumpf v. Hallahan, 101 App. Div. 383, 386, affd. 185 N. Y. 550; Grand v. Livingston, 4 App. Div. 589, affd. 158 N. Y. 688.) The more modern view is that “ the courts, instead of regarding as conclusive the parties’ intention or the place of making or performance, lay emphasis rather upon the law of the place 1 which has the most significant contacts with the matter in dispute ’ ”. (See Auten v. Auten, 308 N. Y. 155, 160; see, also, Rubin v. Irving Trust Co., 305 N. Y. 288, 305.) Whichever of these views one applies in this case, however, the answer is the same, namely, that Illinois law applies.
The agreement, in so many words, recites that it “ shall in all respects be interpreted, construed and governed by the laws of the State of Illinois ’ ’ and, since it was also drawn and signed by the complainant in Illinois, the traditional conflicts rule would, without doubt, treat these factors as conclusive and result in applying Illinois law. But, even if the parties’ intention and the place of the making of the contract are not given decisive effect, *560 they are nevertheless to be given heavy weight in determining which- jurisdiction “ ‘ has the most significant contacts with the matter in dispute’”. (Auten v. Auten, 308 N. Y. 155, 160, supra.) And, when these important factors are taken together with other of the “ significant contacts ” in the case, they likewise point to Illinois law. Among these other Illinois contacts are the following: (1) both parties are designated in the agreement as being “ of- Chicago, Illinois ”, and the defendant’s place of business is and always has been in Illinois; (2) the child was born in Illinois; (3) -the persons designated to act as agents for the principals (except for a third alternate) are Illinois residents, as are the-attorneys for both parties who drew the agreement; and (4) all contributions for support always have been, and still are being, made from Chicago; •'
Contrasted with these Illinois contacts, the New York contacts are of far less weight and significance. ■ Chief among these is the fact that child and mother presently live in New York and that part of the “ liaison ” took place -in New York. When these contacts are measured against the parties’ clearly expressed intention to have their agreement governed by Illinois law and - the more numerous and more substantial Illinois contacts, it may not be gainsaid that the-££ center of gravity ” of this agreement is Illinois and that, absent compelling public policy to the contrary (see Straus & Co. v. Canadian Pacific Ry. Co., 254 N. Y. 407, 414), Illinois law should apply.
As to the question of public policy, we would emphasize that the issue is not whether the New York statute reflects a different public policy from that of the Illinois statute, but rather whether enforcement of the particular agreement before us under Illinois law represents an affront to our public policy. (Cf. Loucks v. Standard Oil Co., 224 N. Y. 99, 111; Mertz v. Mertz, 271 N. Y. 466, 471; Restatement 2d, Conflict of Laws, Tentative Draft No. 6, § 332a, comment g.) It is settled that the New York Paternity Law requires something more than the provision of ‘ ‘ the bare necessities otherwise required to be supplied-by the community ”, that,££ although providing for indemnification of the community, [it] is chiefly concerned with the welfare of the child ’’. (See Schaschlo v. Taishoff, 2 N Y 2d 408, 411.) In our judgment, enforcement of the support agreement in this case under Illinois law and the refusal to allow its provisions to be reopened in the present proceeding does not do violence to this policy.
*561 As matter of fact, the agreement before us clearly goes beyond 11 indemnification of the community ’ ’ and the provision of ‘ ‘ bare necessities ”. Whether we read it as a whole, or look only to the financial provisions concerned ($275 a month until the child reaches the age of 16), we must conclude that “ the welfare of the child ’ ’ is fully protected. (See Rhyne v. Katleman, 285 App. Div. 1140, affg. 206 Misc. 202 [$10,000 lump sum held sufficient].) The public policy of this State having been satisfied, there is no reason why we should not enforce the provisions of the parties’ support agreement under Illinois law and treat the agreement as a bar to the present action for support.
The order of the Appellate Division should be affirmed.
Chief Judge Desmond and Judges Dye, Froessel, Van Voorhis, Burke and Foster concur.
Order affirmed.