Harry M. PERRIN, Plaintiff-Appellee,

v.

Daniel PEARLSTEIN, Defendant-Appellant.

No. 177, Docket 27758.

United States Court of Appeals Second Circuit.

Argued Dec. 13, 1962.

Decided March 4, 1963.

Markewich, Rosenhaus, Beck & Garfinkel, New York City (Jay Leo Rothschild, Jerome G. Rosenhaus, Harry L. Staley, New York City, of counsel), for defendant-appellant.

Samuel Mezansky, New York City (Daniel H. Greenberg, New York City, Melvin Schwartz, Pittsburgh, Pa., of counsel), for plaintiff-appellee.

Before WATERMAN, MOORE and SMITH, Circuit Judges.

WATERMAN, Circuit Judge.

Harry M. Perrin, a Pennsylvania food broker, brought this contract action in the United States District Court for the Southern District of New York against defendant-appellant, a New York manufacturer of dog food products. Federal jurisdiction was grounded upon a diversity of citizenship. Perrin claimed loss of prospective profits resulting from his discharge in breach of an alleged oral agreement under which he was to represent defendant in western Pennsylvania as long as both parties remained in business. After a trial by jury and the

denial of defendant's timely motion for a directed verdict, judgment was entered upon a verdict for the plaintiff in the amount of $45,000.

Defendant appeals, claiming error in the denial of his motion for a directed verdict on the grounds that (1) the alleged agreement was void and unenforceable under the New York statute of frauds, and (2) the evidence failed to establish a contract between the parties other than one at will. Defendant further maintains that in any event a new trial is required as there was no foundation in the evidence upon which the jury could have assessed the damages it awarded plaintiff for loss of prospective profits. We hold that the judgment must be reversed and we remand for a new trial.

The facts of the case are somewhat obscure, and are vigorously disputed. Plaintiff, a lawyer, testified at trial that he had been in the food brokerage business in Pittsburgh, Pa. and had known the defendant Pearlstein since 1935. In 1938 or 1939, plaintiff testified, Pearlstein telephoned plaintiff from New York to discuss with plaintiff the will of Pearlstein's father-in-law, a will that plaintiff had drawn. Defendant allegedly stated: "Well, Harry, remember, as long as I am in the dog food business and you are in the food brokerage business, you are always going to represent me." Plaintiff claims to have responded: "I appreciate what you have done for me, and I am glad to hear you say what you did, that I will always represent you in the dog food business."

No written memorandum of this alleged telephone conversation and agreement was ever made.

Thereafter, plaintiff acted as sales representative in an area of Western Pennsylvania for the dog food products of the Lar-Dan Packing Company, a New York partnership composed of the defendant Pearlstein and one Larry Baff.

In 1943 or 1944, the Lar-Dan partnership was dissolved when Mr. Baff withdrew in order to form a competing company. Some time after the dissolution, Pearlstein formed a new partnership, the Re-Dan Packing Company, for the manufacture of dog food; and, at that time, according to plaintiff's testimony, Pearlstein again telephoned him and said:

"Harry, I want you to represent our firm, Re-Dan Packing Company, and I don't want you to represent the firm that Larry Baff is forming." "If you do that, I will assure you once again as long as I am in the dog food business and you are in the food brokerage business you are going to represent me."

Plaintiff allegedly responded:

"Dan, that is enough for me. Then I agree to that and I will continue to represent you as long as I am in the brokerage business."

Again, no written memorandum was made of the alleged agreement, but plaintiff represented Re-Dan until 1956 when he was discharged and another broker was appointed for the Western Pennsylvania area. It is agreed that plaintiff received all brokerage commissions earned by him up to the time of his discharge.

Defendant flatly denies that either of the conversations testified to by Perrin took place. Perrin's initial employment, defendant testified, was arranged by conversations between the parties in New York in 1936 or 1937. Defendant further claims that the contract was for an indefinite term, leaving Pearlstein free to discharge the plaintiff at will or after a reasonable period of time after the formation of the agreement.

Our first inquiry is directed to an examination of whether the alleged agreement is an enforceable one. In his instructions to the jury, the trial judge, over defendant's objection, stated:

"We have some doubt here about whether the law of Pennsylvania or the law of New York applies to this case, but there isn't any difference in that respect. In neither state would [the contract] have to be in writing,

so it doesn't matter that it wasn't in writing."

It is agreed by the parties that Pennsylvania has no applicable Statute of Frauds that would prevent recovery upon the alleged agreement here in suit; but whether the agreement falls within the New York statute as an agreement which "[b]y its terms is not to be performed within one year from the making thereof",[1] raises difficult issues of New York law.

In Zupan v. Blumberg, 2 N.Y.2d 547, 161 N.Y.S.2d 428, 141 N.E.2d 819 (1957), the New York Court of Appeals held unenforceable under § 31(1) an oral agreement to pay commissions on all future orders received from customers initially solicited by the agent. Although the court recognized that, of course, the contract could terminate within one year if the principal's business was dissolved or otherwise ended, the court, quoting from Cohen v. Bartgis Bros. Co., 264 App.Div. 260, 261, 35 N.Y.S.2d 206, 208, stated that such a termination would not be the "performance, but rather the destruction of the contract * * * *where there is no provision authorizing either or both of the parties to terminate as a matter of right.*" (Emphasis supplied.) 2 N.Y.2d at 550, 161 N.Y.S.2d at 429, 141 N.E.2d at 820, 821. And see Martocci v. Greater New York Brewery, 301 N.Y. 57, 62–63, 92 N.E.2d 887, 889.

Relying upon the dicta from Zupan and Cohen, we held in Farmer v. Arabian American Oil Co., 277 F.2d 46, 50 (2 Cir., 1960), cert. denied, 364 U.S. 824, 81 S.Ct. 60, 5 L.Ed.2d 53, that an oral employment contract expressly limited to the duration of defendant's oil operations in Saudi Arabia was not within the New York statute. Although termination of the agreement upon discontinuance of the employer's business operations would concededly have been implied in any event, we interpreted the express limitation to be the kind of authorization "to terminate as a matter of right" referred to in Zupan v. Blumberg.

■■ Under the rule of Farmer v. Arabian American Oil Co., thus, the alleged agreement here in suit would be without the New York statute by virtue of its express limitation to the duration of the parties' business operations.

Appellant, however, has brought to our attention a recent decision of the New York courts which casts doubt upon the present vitality of the dicta contained in the New York cases upon which we based our prior interpretation of New York law. In Nurnberg v. Dwork, 12 App. Div.2d 612, 208 N.Y.S.2d 799 (1960), aff'd by mem. opinion, 12 N.Y.2d 776, 234 N.Y.S.2d 721, 186 N.E.2d 568 (1962), plaintiff brought action for breach of an oral agreement under which he was to negotiate with M. H. Fishman Co. for concessions permitting defendants to operate retail outlets in Fishman stores. According to the complaint, defendants agreed to pay plaintiffs 1% of the gross sales of any outlets thus established, "so long as the concessions [were] maintained by the defendants." 208 N.Y.S.2d at 800. Citing Zupan v. Blumberg, supra, Cohen v. Bartgis Bros. Co., supra, and Martocci v. Greater New York Brewery, supra, the Appellate Division held the agreement void and unenforceable under the New York statute of frauds. Although the opinion in Nurnberg v. Dwork neither discusses nor expressly disapproves our apparently conflicting result in Farmer v. Arabian American Oil Co., we are constrained[2] to follow what we understand to be the latest interpretation of the New York statute by the courts of that state. Accordingly, we hold that the court below was in error in instructing the jury that the agreement in suit, if made in New York, was not required to be in writing under New York law.

---

1. New York Personal Property Law, McKinney's Consol.Laws, c. 41, § 31(1).

2. Green v. Neal's Lessee, 6 Pet. 291, 8 L.Ed. 402 (U.S.1832); and see Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Whether New York rather than Pennsylvania law was controlling on this issue, however, remains to be determined, and it is to that question that we now turn.

██ Plaintiff testified that both of the parties' alleged agreements, that in 1938 or '39 and that in 1943 or '44, were arrived at in the course of long distance telephone conversations, Pearlstein's offers being made from New York, Perrin's acceptance being made in Pennsylvania. If plaintiff's account of these events is to be believed, it is clear under the New York law that Pennsylvania would be regarded as the place of the making of the contract, for the last act necessary to the making of the alleged agreement occurred in Pennsylvania. Fremay, Inc. v. Modern Plastic Machinery Corp., 15 A.D.2d 235, 222 N.Y.S.2d 694 (1961). Defendant testified, however, that the parties' relationship was established in the course of conversations in New York. By his account, then, New York was the place of making of the contract.

██ Under traditional conflict of laws doctrine, the *lex loci contractus* governs the validity of an agreement, at least in the absence of clearly contrary intentions of the parties. See, e. g., Swift & Co. v. Bankers Trust Co., 280 N.Y. 135, 141, 19 N.E.2d 992, 995; Restatement, Conflict of Laws, § 332. Since Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (1954), however, the New York courts, while continuing to give "heavy weight" to the place of making of the contract, and to the intention of the parties, Haag v. Barnes, 9 N.Y.2d 554, 560, 216 N.Y.S. 2d 65, 69, 175 N.E.2d 441 (1961) (per Fuld, J.); Employers' Liability Assurance Corporation, Ltd. v. Aresty, 11 A.D. 2d 331, 205 N.Y.S.2d 711 (1960), aff'd 11 N.Y.2d 696, 225 N.Y.S.2d 764, 180 N.E.2d 916 (1962), have ruled that these factors may not be controlling as to the choice of law where other considerations establish that the "center of gravity" or "the most significant contacts with the matter in dispute" lie in another place.

 In the case before us we find no evidence with respect to the parties' intentions as to the law which should control their alleged undertakings. Other factors, which in differing circumstances might shift the "center of gravity" in the direction either of New York or Pennsylvania, are not present. Perrin was a citizen of Pennsylvania, Pearlstein of New York; Perrin's performance was to be in Pennsylvania, Pearlstein's in New York. Under these circumstances, therefore, we believe that in the courts of New York the weight to be given the place of making of the contract would control as to the law governing the validity or enforceability of the alleged agreement in suit. Haag v. Barnes, supra; Employers' Liability Assurance Corp., Ltd. v. Aresty, supra; Lindeman v. Textron, Inc., 229 F.2d 273 (2 Cir., 1956); Silverman v. Indevco, 106 N.Y.S.2d 669 (Sup.Ct.1951), aff'd, 279 App.Div. 573, 107 N.Y.S.2d 542; New Amsterdam Casualty Co. v. Stecker, 1 A.D.2d 629, 152 N.Y.S.2d 879 (1956), aff'd, 3 N.Y.2d 1, 163 N.Y.S.2d 626, 143 N.E.2d 357 (1957). If plaintiff's account is accepted, therefore, the agreement was made in Pennsylvania and, under the law of that state, was not required to be in writing. If, on the other hand, defendant's testimony is to be believed, New York law controls and the alleged agreement is void and unenforceable under § 31(1) of the Property Law of that state. As the charge given them did not require the jury to resolve this factual dispute, upon the resolution of which turns this preliminary question of validity or enforceability, we have no alternative but to remand for a new trial.

Appellant contends that he was entitled to a directed verdict below not only under the New York Statute of Frauds, but also because of the insufficiency of plaintiff's proofs with respect to the existence of the alleged underlying contract. Were we to sustain appellant's position on this point, a remand for a new trial would not be required.

██ Despite grave doubts which we entertain about the existence of the alleged agreement, we are unwilling so to dispose of the case. Assuming that no

Statute of Frauds precludes recovery, we cannot say that Perrin's testimony of the alleged 1943 or 1944 agreement was insufficient, as a matter of law, upon which to send the issue of defendant's liability to the jury. While the courts of both New York and Pennsylvania have in the past, looked with suspicion upon alleged long-time oral contracts, often finding them lacking in mutuality or too indefinite for enforcement, the modern trend is toward enforcement if the trier finds that the engagements were actually entered into. See, e. g., Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214; Rubin v. Dairymen's League Coop. Ass'n, 284 N.Y. 32, 29 N.E.2d 458; Maxwell v. Schaefer, 381 Pa. 13, 112 A.2d 69.

We shall consider, finally, a third attack which appellant makes on the judgment below, lest, upon a new trial, the outcome be prejudiced by erroneous instructions with respect to damages.

The parties have agreed that plaintiff was paid all sales commissions which were earned by him up to the time of his discharge in 1956. Plaintiff's cause of action, therefore, was solely for loss of prospective profits resulting from his allegedly wrongful discharge. In support of his claimed damages, however, plaintiff offered in evidence only testimony of gross percentage commissions which he was to receive on the sale of various Re-Dan products and a record of gross brokerage commissions actually received during the years 1947 to 1956.

The trial court subsequently observed, out of the jury's hearing:

"There isn't an iota here of what [plaintiff's] business is, how many people he employs, what his overhead is, what his rent is. There isn't a shred of testimony here."

Plaintiff's attorney responded,

"That's correct, your Honor, because on the theory that we are proceeding on this case, that is irrelevant to this situation of damages. We claim that this court should instruct the jury that we are entitled to gross commissions."

Over defendant's objection, the court thereupon instructed the jury on damages. No reference was made to plaintiff's costs of performance or the necessity of deducting such costs from estimated gross commissions lost by him.

 On appeal, plaintiff's attorney appears to concede that the proper measure of damages would be plaintiff's prospective profits or commissions lost less plaintiff's cost of performance. Of course such is the rule, whether New York or Pennsylvania law controls. See, e. g., Sauer v. School District, 243 Pa. 294, 90 A. 150 (1914); Hottinger v. Hoffman-Henor Co., 303 Pa. 283, 154 A. 598 (1931); Rodgers v. Yellow Cab Co., 147 F.2d 611, 619 (3 Cir., 1959); Spitz v. Lesser, 302 N.Y. 490, 99 N.E.2d 540; Burke, Kuipers & Mahoney v. Dallas Dispatch Co., 253 App.Div. 206, 1 N.Y.S. 2d 674. Upon a new trial the burden will be upon the plaintiff to establish his damages within the measure herein prescribed.

Reversed and remanded.