OPINION OF THE COURT
Herbert A. Posner, J.
The plaintiff seeks to recover $2,200 on the basis of a three-page written agreement “knowingly” entered into by two “consenting” adults. However, beyond the written agreement itself lies a tale which includes romance, passion, adultery, illegitimacy and assertions of forgery, duress and fraud.
This action was tried, without a jury, in the Civil Court but was transferred, by consent, to the Supreme Court after the Trial Judge was sworn in as a Justice of the Supreme Court. This transfer permits the Trial Judge to render a decision in the case, thereby avoiding a mistrial. There is, of course, no jurisdictional obstacle to the transfer since the Supreme Court is a court of original, unlimited and unqualified jurisdiction, Kagen v Kagen, 21 NY2d 532.)
The plaintiff and defendant met in 1975 while they were co-workers at the Ford Assembly Plant in Mahwah, New Jersey. Despite the fact both were married to others at the time, they entered into a sexual relationship. The defendant who lived in Queens County remained married and *527 was still living with his wife at the time of this trial. The plaintiff testified that she was separated from her husband when she first met the defendant, although she and her husband were then living in the same house; that sometime in 1976 her husband moved out of the house; and that they were divorced on October 2, 1978. On December 20, 1978, the plaintiff gave birth to a female child, Andrea Solange Auleta, at the Valley Hospital in Ridgewood, New Jersey. The plaintiff testified she was not intimate with her husband after she met the defendant and that the defendant was the father of the child.
Before the birth of the child, the plaintiff who resided in New Jersey consulted an attorney in that State. According to the plaintiff, this attorney prepared a written agreement between the plaintiff and defendant concerning the custody and support of the child. This agreement was signed by both parties and the signatures witnessed by a legal secretary in the office of the attorney who prepared it. The witness appeared and testified at the trial. Her testimony belied the defendant’s claims of fraud, ignorance and duress.
The agreement, which is dated December 19, 1978, was introduced in evidence and in it, the defendant acknowledges his paternity of the child. Among other things, the agreement provides that the plaintiff shall maintain custody of the child with liberal visitation rights to the defendant; that should either one of them die during the child’s minority the survivor shall obtain full and unrestricted guardianship of the child; and that the defendant shall pay the plaintiff the sum of $25 per week for the support of the child. The concluding provision of the agreement recites that it is made in New Jersey and shall be construed and given effect in accordance with the laws and decisions of New Jersey.
The defendant, in his testimony on the witness stand, admitted that he had a relationship with the plaintiff for about three years before the baby was born and for another two years afterward. He also admitted that he went with her to a lawyer’s office the day before she gave birth. However, he testified that the signature on the agreement is not his; that if it is his signature, he didn’t know what he *528 was signing because of his limited knowledge of the English language; and that if he knew what he was signing, he only signed under duress, either because the plaintiff threatened to tell his wife about their affair, or to do bodily harm to him or his family with scissors she carried in her pocketbook. Needless to say, the defendant’s rambling assertions of duress, fraud and forgery were not very credible. His tale of the naive lover, duped by the shrewd, vengeful female, had too many loopholes, including three passionate love letters he admitted writing to her a la Cyrano de Bergerac. A careful reading of these letters shows a man who is very much in love and responsive to the female’s needs.
The court finds that the agreement is to be governed by the laws of the State of New Jersey since, not only is this the stated intention of the parties, but New Jersey is also the place “ ‘which has the most.significant contacts with the matter in dispute’”. (Haag v Barnes, 9 NY2d 554, 559.) The plaintiff and defendant met in New Jersey where they both worked. The plaintiff resided in New Jersey and a substantial part of the liaison took place in that State. The child was born in New Jersey and the support agreement was prepared by a New Jersey attorney and executed in that State. Clearly, the “center of gravity” of this agreement is New Jersey and “absent compelling public policy to the contrary”, New Jersey law should apply. (Haag v Barnes, supra, p 560.) In any event, neither the laws of New York nor of New Jersey preclude enforcement of this support agreement.
At common law, there was no obligation upon the putative father to support his illegitimate child. However, most States, including New York and New Jersey, have statutes which require both the mother and father to support a child born out of wedlock. (Family Ct Act, § 513; NJ Stats Ann, § 9:16-2.) The New Jersey statute provides that: “A child born out of wedlock shall be entitled to support and education from its father and mother to the same extent as if born in lawful wedlock.” New York and New Jersey also have statutory procedures whereby the father’s duty to support the child can be enforced by the mother. (Family Ct Act, § 522; NJ Stats Ann, § 9:16-3.)
*529 The plaintiff in this case is not precluded from instituting a proceeding in the appropriate court to compel the defendant to support his illegitimate child because she was married to another at the time the child was conceived. Contrary to defendant’s contention, in both New York and New Jersey, the presumption of legitimacy can be rebutted and the mother can testify to nonaccess by her husband in a proceeding to obtain support from the putative father. (Commissioner of Public Welfare of City of N. Y. v Koehler, 284 NY 260; Family Ct Act, § 531; B. v O., 50 NJ 93.)
It is well settled that the likelihood of being compelled by legal proceedings to contribute to the support of his illegitimate child furnishes a sufficient consideration for a voluntary contract by the putative father to provide for the child. (Ann., 20 ALR3d 500, 508.) This consideration exists whether the agreement by the mother to refrain from enforcing statutory remedies is express or, as in this case, tacit. (Ann., 20 ALR3d 500, 526-530.) In addition to the consideration afforded by the implicit relinquishment of the right to sue under the applicable statute, the agreement in this case also gives the defendant liberal visitation rights, as well as full and unrestricted guardianship in the event the mother should die during the child’s minority. Accordingly, the agreement is supported by sufficient consideration.
The defendant claims it violates public policy, and relies upon a New Jersey case which held that a promise to support an illegitimate child made to induce a woman to engage in illicit intercourse and adultery is unenforceable because it is contrary to public policy. (Naimo v La Fianza, 146 NJ Super 362.) It is not contended by either party in the instant case that the support agreement, which was signed on the eve of the child’s birth, was made to induce the plaintiff to engage in illicit intercourse and adultery. The defendant testified that he agreed to see the plaintiff’s lawyer because he did not want his wife to know of his relationship with the plaintiff. A desire to avoid exposure has been held to constitute consideration for such an agreement and is not considered duress which voids the contract. (Ann., 20 ALR3d 500, 510-515, 532-534.) The mere fact the agreement was made before the birth of the child did not *530 render it unenforceable. In Naimo v La Fianza (supra) the agreement was made before the child was conceived and was conditioned upon the woman continuing the illicit relationship in order to become pregnant. Such is not the fact in this case. In this connection, it should be noted that both New Jersey and New York have statutes which provide that paternity proceedings can be instituted during the pregnancy of the mother. (NJ Stats Ann, § 9:17-2; Family Ct Act, § 517.)
In New York, a support agreement is binding upon the mother and child only when it is approved by the court and, when so approved, complete performance of the agreement bars other remedies of the mother or child for support. (Family Ct Act, § 516.) Although there is no such requirement of court approval in New Jersey, the paternity laws of that State, like those of New York, are concerned with the welfare of the child and such agreements will be modified if the circumstances so require. (See Kopak v Polzer, 4 NJ 327.) The New York statute, while it preserves the mother’s right to institute paternity proceedings and upset a support agreement that is not court approved, does not preclude her from electing to enforce payment of arrearages due and owing under such an agreement. There is also no bar to such an action to be found in the laws of New Jersey.
In conclusion, the plaintiff seeks recovery of a sum due and owing under an express written contract. In order to find in her favor, this court is not required to make a determination of paternity, nor is this court required to determine the adequacy of the support, for, unlike the . plaintiff in Haag v Barnes (9 NY2d 554, supra), this plaintiff does not seek to upset the support agreement but rather to enforce it. The court finds that the plaintiff in this action is entitled to recover the sum of $2,200, due and owing by the defendant as arrearages through September 26, 1980, pursuant to the agreement dated December 19, 1978.
It is in the best interests of an illegitimate child to encourage amicable agreement between the mother and putative father with respect to the custody and support of the child. (Bacon v Bacon, 46 NY2d 477.) An agreement *531 privately negotiated without judicial proceedings is desirable and should be enforced by the courts when, as in this case, there is no bar to such enforcement either in the laws of this State or the laws of the State which govern the agreement. Accordingly, the court directs the entry of judgment in favor of the plaintiff for the sum of $2,200 with interest from December 26, 1978. All other claims and counterclaims are dismissed with prejudice for failure by the party asserting the claim to prove the claim by a fair preponderance of the evidence.