Gene C. HUNTER, Plaintiff,

v.

H.D. LEE COMPANY, INC., Defendant.

No. 82–CV–195.

United States District Court,
N.D. New York.

Feb. 15, 1983.

---

Scott, Sardano & Pomerantz, Syracuse, N.Y., for plaintiff; Kenneth J. Bobrycki, Syracuse, N.Y., of counsel.

Morgan, Lewis & Bockius, Philadelphia, Pa., Bond, Schoeneck & King, Syracuse, N.Y., for defendant; Allen J. Gross, Kenneth D. Kleinman, Philadelphia, Pa., R. Daniel Bordoni, Thomas E. Myers, Syracuse, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

Plaintiff is a former employee of defendant H.D. Lee Co., Inc. and has commenced this action for commissions claimed to be due and owing as a result of his work as a salesman. Plaintiff's employment was terminated in March of 1980, though the parties dispute the effectiveness of the alleged "termination notice" claimed to have been mailed to plaintiff. The gravamen of plaintiff's complaint is that prior to his termination in March of 1980, he had written orders for $1,300,000.00 for which commissions were due and owing. In addition, plaintiff has asserted claims for such prospective damages as loss of future income, reputation, and moving expenses.

Presently before the Court is defendant's motion to dismiss that part of the complaint seeking damages in excess of commissions on sales allegedly made by plaintiff and shipped within 60 days of his termination, and for an order dismissing plaintiff's claim for fraud on the ground that it was not pled with sufficient particularity. In addition, defendant has moved to strike part of the complaint on the ground that it contains redundant causes of action and that such redundancy is prejudicial to defendant. Inasmuch as the Court has been presented with submissions beyond the pleadings, the Court will treat defendant's motion to dismiss as one for summary judgment pursuant to Rule 56. *See* Fed.R.Civ.P. 12(b). Before reaching the viability of plaintiff's claims, this Court must first address the choice of law issue.

### CHOICE OF LAW

Jurisdiction in this case rests on diversity of citizenship, and, therefore, the Court must apply the substantive law of the forum state, including the conflict of law rules. *See Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, the conflict of law rules of New York are applicable. *Peckham v. Lindner,* No.

79–CV–84, slip op. at 3 (N.D.N.Y. June 25, 1980). Under these rules, a New York court is required to apply the law of "the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson,* 12 N.Y.2d 473, 481, 191 N.E.2d 279, 283, 240 N.Y.S.2d 743, 749 (1963).

■ In the present case, however, there is an express choice of law provision contained in the contract between the parties. Paragraph 26 of the agreement between plaintiff and defendant provides that "[t]his agreement, including any revisions, additions, and supplements hereto, shall be deemed to have been made and at least partly performed in the State of Kansas and shall be governed by and construed in accordance with the laws of that state." Therefore, the intention of the parties must be given great weight by this Court. *Haag v. Barnes,* 9 N.Y.2d 554, 560, 175 N.E.2d 441, 444, 216 N.Y.S.2d 65, 69 (1961); 19 N.Y.Jur.2d, *Conflict of Laws,* § 33 (1982).

■ Under New York law, contracting parties may provide for the application of a particular state's law as long as the contract bears a reasonable relationship to the state whose law is chosen and the application of that law does not offend the fundamental public policy of New York. *A.S. Rampell, Inc. v. Hyster Co.,* 3 N.Y.2d 369, 382, 144 N.E.2d 371, 380, 165 N.Y.S.2d 475, 486 (1957) (citing *Compania De Inversiones Internacionales v. Industrial Mtge. Bank,* 269 N.Y. 22, 26, 198 N.E. 617, 618, 101 A.L.R. 1313; *Dougherty v. Equitable Life Assur. Soc.,* 266 N.Y. 71, 80, 193 N.E. 897, 899); *Gambar Enterprises Inc. v. Kelly Services, Inc.,* 69 A.D.2d 297, 303, 418 N.Y. S.2d 818, 822 (4th Dep't 1979); *see also R–T Leasing Corp. v. Ethyl Corp.,* 494 F.Supp. 1128, 1131 (S.D.N.Y.1980); *Fleischmann Distilling Corp. v. Distillers Co. Ltd.,* 395 F.Supp. 221, 229 (S.D.N.Y.1975) (collecting cases). Thus, the Court must examine the contacts between the contract and the state whose law was chosen, Kansas.

■ Here, defendant is a Kansas Corporation with headquarters in Merriam, Kansas and employs sales representatives in 220 territories covering the United States. Salaries and commissions for all sales personnel are paid from company headquarters in Merriam, Kansas. All orders are submitted by sales representatives to the Kansas office and then orders are shipped from one of the two distribution centers in either Lenexa, Kansas or Nashville, Tennessee. Finally, all questions dealing with company policy, customer service, merchandising, and advertising are handled at company headquarters in Merriam, Kansas.

As to plaintiff's association with defendant, plaintiff asserts that he was hired in 1977 as a sportswear salesman for the greater Pittsburgh, Pennsylvania area and that his territory included parts of West Virginia and Ohio. Plaintiff also submits that he relocated his family to Pennsylvania after all of the contract negotiations took place in New York. Moreover, plaintiff notes that when he was given special recognition for his sales abilities, the letter came from Lee management in New York. Lastly, plaintiff contends that he often had business meetings with company representatives in New York, Pittsburgh, and Cleveland.

In the Court's view, there are sufficient ties between plaintiff's contract with defendant and the state of Kansas to warrant application of that state's law. While it is true that plaintiff's contract appears to be a standard form contract used for all sales representatives, there is no evidence to even suggest that it was not freely entered into. Plaintiff has not claimed that he was coerced into signing the agreement and there has been no proof offered that he did not understand the ramifications of the contractual provision at issue. At best, defendant was in a superior bargaining position vis-a-vis plaintiff. Clearly, the law will not strike down a contract merely because one party was in a better bargaining position than the other. Accordingly, the Court finds that paragraph 26 of the contract should be given effect and that the law of Kansas should be applied. As to the claim

that Kansas law violates fundamental public policy, this will be examined in light of the individual claims.

## PLAINTIFF'S CLAIMS

Plaintiff's complaint contains six causes of action, namely, breach of contract, quantum meruit, fraud, improper termination, and two inconsistent counts requesting an accounting and future commissions. These last two counts are inconsistent in that they request commissions for all sales from plaintiff's termination date to the date of the commencement of this action, however, the amount demanded in count five is at a rate of 5%, while the amount demanded in count six is 4.1%. The Court is at a loss to explain the discrepancy in commission rates and plaintiff has offered no explanation for it. Defendant's summary judgment motion seeks to eliminate plaintiff's claims in counts one, three, four, five and six that ask for damages in excess of commissions payable for orders shipped within sixty days following plaintiff's termination. In support of its motion, defendant points to paragraph 20 of the contract which restricts post-termination payments to this sixty day time period.

■ The law in Kansas is clear that "in the absence of a contract, express or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party." *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 54, 551 P.2d 779, 781 (1976) (citing *Johnston v. Farmers Mutual Ins. Co.,* 218 Kan. 543, 545 P.2d 312 (1976); *Lorson v. Falcon Coach, Inc.,* 214 Kan. 670, 522 P.2d 449; *May v. Santa Fe Trail Transportation Co.,* 189 Kan. 419, 370 P.2d 390; *Swart v. Huston,* 154 Kan. 182, 117 P.2d 576; and 53 Am.Jur.2d, *Master and Servant,* § 43, pp. 117–18). And, "[o]ne whose employment is terminable at will . . . has no enforceable claim for breach of contract against the employer who discharges him." *Mildfelt v. Lair,* 221 Kan. 557, 563, 561 P.2d 805, 811 (1977) (citing *Johnson v. National Beef Packing Co.*).

■ There are exceptions, however, to the "at will" rule for contracts without a specific duration. For example, the courts of Kansas have recognized a cause of action for the discharge of an "at will" employee discharged for filing a worker's compensation claim, *Murphy v. Topeka-Shawnee County Dep't of Labor Services,* 6 Kan. App.2d 488, 495, 630 P.2d 186, 192–93 (1981), and have intimated that a person might state a valid cause of action for discharge after the reporting of an embezzlement to his superiors, *Johnston v. Farmers Alliance Mutual Ins. Co.,* 218 Kan. 543, 545 P.2d 312 (1976). In addition, the courts of other states have recognized exceptions in cases of discharge for failure to accede to the sexual demands of a supervisor, *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974), reporting to jury service in violation of an employer's orders, *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975) (In Banc), and the refusal to give perjured testimony, *Petermann v. International Bthd. of Teamsters,* 174 Cal.App.2d 184, 344 P.2d 25 (2d Dist.1959). *See generally* Annot., *Discharge of At-Will Employee,* 12 A.L. R.4th 544 (1982); Annot., *Employment Contract Terminable at Will,* 62 A.L.R.3d 271 (1975). In the present case, plaintiff simply alleges that his discharge violates public policy. He has not alleged that he was discharged for the assertion of any constitutional or statutory rights. Instead, plaintiff alleges that his termination was with abusive disregard of the implied covenant of good faith and fair dealing, and was made in bad faith and with malice. Complaint ¶ 8.

Plaintiff has not presented this Court with any authorities from Kansas to suggest that a general public policy exception is to be made with all "at will" employment contracts. Moreover, such a theory flies in the face of the policies underlying the "at will" employment contract. "At will" employment contracts give the employee the absolute freedom to quit at any time and assure employers of employing the most highly qualified workers. Thus, plaintiff has not demonstrated that he is entitled to recovery on an abusive discharge theory or

for his prospective losses as a result of his termination.

As to plaintiff's claim that his termination was ineffective and that he is entitled to all commissions on sales from his territory from his discharge date to the date of commencement of this action, this Court finds such a contention to be without merit. Paragraph 22 of the contract provides that "the salesperson or Company may terminate this contract at any time by giving one week's written notice of his/her intention to do so, by registered or certified mail." In plaintiff's view, defendant's failure to "prove" receipt of the notice by plaintiff conclusively establishes that the notice of termination was ineffective. *See* A. Corbin, *Corbin on Contracts,* § 1266 at 56–57, 65–66 (1962).

Again, plaintiff has provided no authority for his claim that the Kansas courts would apply such a rule, and this Court has found no such authority through its own research. However, as defendant correctly observed, the Supreme Court of Kansas has expressed a general willingness to follow Am.Jur.2d in the area of employee relations. *See, e.g., Johnson v. National Beef Packing Co.; Lorson v. Falcon Coach, Inc.* This treatise provides that:

> As a general rule, where a contract of employment stipulates that it may be terminated on giving notice of an intention to end it a certain time prior to the time of termination, a shorter notice than that stipulated is nonetheless effective after the lapse of the agreed time. [footnote omitted]. However, the summary discharge of an employee entitled, under the employment contract, to a specified period of notice ordinarily permits him to recover his compensation for the notice period only, and not for the entire balance of the contract period.

53 Am.Jur.2d, *Master and Servant,* § 36 at 112 (1970).

In the Court's view, such a result makes inherently more sense than the policy suggested by plaintiff. To compensate plaintiff for all sales from his termination date to the date of the commencement of this action would surely constitute a form of punishment on defendant and convey to plaintiff a windfall of unjust enrichment. This view is supported by Professor Williston in his treatise where he states that a person receiving ineffective notice would only be entitled to compensation for the notice period in addition to any other contractually mandated period. 9 S. Williston, *A Treatise on the Law of Contracts,* § 1017 at 136–37 (3d ed. 1967). *See also Holt v. Seversky Electronatom Corp.,* 452 F.2d 31, 34 (2d Cir.1971) (applying New York law).

In conclusion, therefore, the Court finds that defendant has met its burden with respect to this motion for summary judgment and has demonstrated that there are no material facts in dispute and that it is entitled to judgment as a matter of law. *United States v. One Tintoretto Painting,* 691 F.2d 603 (2d Cir.1982); *Doe v. Syracuse School District,* 508 F.Supp. 333, 337 (N.D. N.Y.1981). Accordingly, the Court hereby dismisses that part of plaintiff's complaint which seeks damages for breach on contract, loss of future income, loss of reputation, moving expenses, and abusive discharge. Further, plaintiff's claim for an accounting and for commissions earned in "his" territory after his discharge is likewise dismissed. Plaintiff is, however, entitled to recover, after presentation of sufficient proof, all commissions earned by him on goods shipped sixty days and one week following his discharge on March 10, 1980. Plaintiff would, of course, only be entitled to his commissions for the sixty day period if defendant can prove that its termination notice complied with paragraph 22 of the contract.

### FRAUD CLAIM

Rule 9(b) of the Federal Rules of Civil Procedure provides in part that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In the present case, defendant claims that plaintiff's allegation of fraud has not been stated with sufficient particularity and that this allegation is merely a restatement of

other claims set forth in the complaint. The rule has three distinct purposes.

First, it ensures that the allegations are specific enough to inform a defendant of the act of which the plaintiff complains and to enable him to prepare an effective response and defense. Second, it eliminates those complaints filed "as a pretext for discovery of unknown wrongs." A plaintiff in a non 9(b) suit can sue now and discover what his claim is, but a Rule 9(b) claimant must know what his claim is when he files it. Third, Rule 9(b) seeks to protect defendants from unfounded charges of wrongdoing which injure their reputations and goodwill.

2A J. Moore, *Moore's Federal Practice,* ¶ 9.03 at 9–17 n. 2a (2d Ed.Supp.1982–83). While state law will govern the proof of any claims at trial, the application of Rule 9(b) is a special pleading requirement for the federal courts and it, therefore, governs the instant motion. 5 C. Wright & A. Miller, *Federal Practice and Procedure:* Civil § 1297 (1969 & Supp.1981).

■ Count three of plaintiff's complaint alleges that defendant defrauded plaintiff by hiring him with the intent of dismissing him after he had developed the Pittsburgh territory. In this fashion, plaintiff would be deprived of his hard-earned commissions. In essence, the language of the third count tracks the elements of common law fraud. "A pleading that simply avers the technical elements of fraud does not have sufficient informational content to satisfy the rule's requirement." 5 C. Wright & A. Miller, *supra* § 1297 at 404. Moreover, the normal rule in fraud cases is that the pleader "must state the time, place and content of the false misrepresentation and what was obtained or given up as a consequence of the fraud." 2A J. Moore, *supra* ¶ 9.03 at 9–20 to 24.

■ Plaintiff's non-compliance with Rule 9(b) is not fatal in view of the liberal amendment policy underlying Rule 15. Here, the Court finds that plaintiff should be given leave to amend the third count of his complaint to properly satisfy Rule 9(b) and he is hereby directed to do so. The

time, place and content of the misrepresentation, if known, must be pleaded. At the very least, plaintiff must plead the fraud with enough specificity to allow defendant to investigate the allegations and properly prepare its defense.

■ As to defendant's argument that the third count of the complaint is essentially a restatement of other matter, Rule 8(e)(2) provides that a party may set forth two or more statements of a claim or defense alternatively or hypothetically. Plaintiff is, however, only entitled to one recovery regardless of the number of his claims. Thus, the fact that count three might be a restatement of other matter is not grounds for dismissal. Notwithstanding this Court's dismissal above of plaintiff's claim for consequential damages on his other claims, plaintiff would still be entitled to the normal measure of contract damages if he prevails on his fraud claim.

## MOTION TO STRIKE REDUNDANT CLAIMS

■ As noted above, Rule 8(e)(2) allows for the pleading of inconsistent or alternative claims. Here, plaintiff is entitled to only one recovery for his lost commissions. Although the Court expresses no opinion as to the viability of a claim for fraud, plaintiff may recover damages for fraud if he meets his burden of proof on the issue. He may not, however, simply restate his claim for lost commissions and thereby gain a double recovery. In view of the Court's treatment of defendant's motion for summary judgment, there is no need to grant the motion to strike. Accordingly, that motion is denied.

Plaintiff is hereby directed to file an amended complaint restating his claim for fraud within thirty (30) days of the date of entry of this decision. Should plaintiff fail to file his amended complaint within thirty days, his third cause of action shall be dismissed.

It is so Ordered.