CARGILL, INCORPORATED, Plaintiff–Appellee–Cross–Appellant,

v.

CHARLES KOWSKY RESOURCES, INC.; Charles Kowsky; John Conway, Defendants–Appellants–Cross–Appellees.

Nos. 1833, 1834, Dockets 91–7326, 91–7376.

United States Court of Appeals, Second Circuit.

Argued Aug. 13, 1991.

Decided Nov. 13, 1991.

Randall J. Ezick (Roemer and Feather-
stonhaugh, P.C., Albany, N.Y., of counsel),
for defendants-appellants-cross-appellees.

Kenneth L. Robinson (Levine, Robinson & Algios, P.C., Mitchel Field, N.Y., of counsel), for plaintiff-appellee-cross-appellant.

Before MINER, WALKER and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Defendants (collectively "Resources") appeal from a judgment entered in the United States District Court for the Southern District of New York (Kevin Thomas Duffy, *Judge*), granting summary judgment to plaintiff ("Cargill"), and awarding Cargill $82,538.79. Cargill cross-appeals the district court's denial of its request for attorney's fees.

This action arises out of Cargill's demand that Resources reimburse Cargill for the Gross Receipts Tax ("GRT") Cargill paid on gasoline that it sold to Resources. When Resources refused the demand, Cargill sued in the United States District Court for the Southern District of New York, alleging that Resources was contractually obligated to pay the GRT to Cargill. Thereafter, Cargill moved for summary judgment in the amount of $57,518.32 for the unpaid GRT, $25,020.47 in interest on the unpaid GRT, and attorney's fees. Resources cross-moved for summary judgment, asserting that it was not legally obligated to pay the GRT to Cargill.

The district court granted Cargill's motion for summary judgment for the full amount of GRT and awarded interest on the unpaid GRT, but denied its request for attorney's fees. The court also denied Resources' cross-motion for summary judgment. We disagree with the district court's conclusion that Resources was obligated as a matter of law to reimburse Cargill for the GRT on Resources' purchases. Accordingly, we hold that summary judgment was improperly granted, and vacate the judgment of the district court and remand for further proceedings.

## BACKGROUND

Cargill is a wholesaler of gasoline and other petroleum products, which it sells to various distributors. Under New York law, as a wholesaler of petroleum products, Cargill must pay New York State a tax of 2.75 percent of the purchase price of all petroleum products that it sells to distributors within New York. N.Y.Tax Law § 301(a). This tax is known as the Gross Receipts Tax, or GRT. While only the wholesaler is legally obligated to pay the GRT, it is common practice (and legal) for the wholesaler to require distributors to reimburse the wholesaler for the GRT. The distributor's duty to reimburse the wholesaler, however, arises solely from the contract between the distributor and the wholesaler. *See, e.g., Burnside Coal & Oil Co. v. City of New York*, 135 A.D.2d 413, 414, 521 N.Y.S.2d 703, 705 (1st Dep't 1987). If the wholesaler does obtain reimbursement from the distributor, the wholesaler must pay tax on the reimbursement it receives. The rate at which GRT is charged thus becomes 2.83 percent. *See* N.Y.Tax Law § 301(a).

In October 1986, Resources, a petroleum distributor, submitted an application to Cargill requesting permission to purchase gasoline from Cargill on credit. Cargill approved the application in December, 1986. The approved application constituted the entire agreement between Cargill and Resources.

The agreement required Resources to (1) pay a monthly service charge of one and one-half percent on gasoline charges outstanding for more than twelve days; (2) pay reasonable attorney's fees and costs in the collection of any outstanding charges; (3) consent to jurisdiction in Massachusetts for any legal actions brought to enforce the agreement; (4) agree that Massachusetts law would govern all disputes between Cargill and Resources. Significantly, the agreement contained no provision obligating Resources to reimburse Cargill for the GRT.

The agreement did not require Resources to purchase any specific quantity of gasoline from Cargill, but rather gave Resources a line of credit to buy gasoline whenever it desired to do so. Resources would base its decision to buy gasoline from Cargill, rather than some other

wholesaler, on daily price quotes submitted by a Cargill sales representative. As little as a 15/100 of a cent difference in the per-gallon price of gasoline could sway Resources' decision to purchase from a particular wholesaler.

Resources made its first purchase from Cargill on July 1, 1987, and ultimately bought a total of 3,328,677 gallons of gasoline from Cargill at various times between July 1, 1987 and August 12, 1988. After each purchase, Cargill sent Resources an invoice listing the type of fuel and the total amount Resources owed on the purchase. The amount charged on each invoice included three taxes: Federal Excise Tax, New York Sales Tax, and New York Motor Fuel Tax. Each tax was listed as a separate line item. The invoices, notably, did not mention any charge for the GRT. Resources paid the amounts listed on all of the invoices in a timely manner. The total amount paid by Resources was $2,456,384.80.

In July 1988, Cargill's tax manager noticed that the total amount of GRT that Cargill owed New York State from its sale of gasoline to various New York retailers did not jibe with the amount of GRT that Cargill had collected from the retailers. The tax manager combed through each retailer's account, and discovered that one of Cargill's computer programmers had mistakenly coded Resources' account as exempt from GRT. As a result of this program error, Cargill had neglected to charge GRT on its invoices to Resources.

In an attempt to recover the uncharged GRT, Cargill sent a letter to Resources, admitting Cargill's mistake and requesting payment of the uncharged amount. As supporting proof, Cargill also sent Resources several "adjustment memos," detailing the precise amount of unpaid GRT for each month in which Resources had purchased gasoline from Cargill. This came to $57,518.32. Resources simply refused to pay, asserting that it had paid Cargill's invoices in full, and that it had no prior notice that it would owe anything to Cargill above the amount that was charged in the invoices.

Cargill filed suit in the district court for the full amount of the GRT with interest at one and one-half percent per month, dating from Resources' initial refusal to pay the amounts listed on the adjustment memos. Cargill also sought attorney's fees.

Both parties moved for summary judgment. In its motion, Cargill argued that, despite the approved application's silence on the issue of GRT reimbursement, a generic form letter (the "Letter") that Cargill had written on June 19, 1987 to its distributors gave Resources notice of Cargill's intention to charge GRT on Resources' purchases. The Letter was written by the gasoline manager of Northeast Petroleum (a division of Cargill). In its entirety, the Letter stated:

June 19, 1987

Dear Customer:

Effective July 1, 1987, Northeast Petroleum will change it's [sic] New York State Gross Receipts Tax line item charge form 2.75% to 2.83%.

Should you have any questions, please feel free to contact your Sales Representative or myself.

Very truly yours,
Northeast Petroleum
(signed)
William Overton

There is no proof that Cargill ever sent the Letter to Resources. Overton did not recall sending the Letter to Resources, nor did Cargill's credit manager remember mailing the Letter to Resources. Resources' president denied that his company ever received the Letter.

The district court awarded Cargill summary judgment, finding that the Letter gave Resources notice that Cargill would charge GRT on Resources' purchases, regardless of when Cargill actually invoiced Resources for the GRT. The court awarded Cargill $57,518.32 in unpaid GRT, plus $25,020.47 in interest dating from Resources' first refusal to reimburse Cargill for the uncharged GRT. The district court declined to award Cargill attorney's fees, because Cargill had sued in New York, rather than Massachusetts.

Because there remains serious doubt about whether Resources actually received the Letter, we hold that the district court improperly granted summary judgment in favor of Cargill. We therefore vacate the judgment of the district court and remand for further proceedings. Furthermore, because our holding leaves open the issue of whether Resources must pay any amount of GRT to Cargill, we dismiss as not yet ripe Cargill's cross-appeal for attorney's fees.

### DISCUSSION

■ We address initially the effect of the provision in the parties' agreement that Massachusetts law governs all actions brought to enforce the agreement. Because this is a diversity case, we confront this question by applying the choice-of-law rules of the forum state, which in this instance is New York. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ In the absence of a violation of a fundamental state policy, New York courts generally defer to the choice of law made by the parties to a contract. *See, e.g., Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir.1987) (interpreting New York law). However, New York law allows a court to disregard the parties' choice when the "most significant contacts" with the matter in dispute are in another state. *Haag v. Barnes*, 9 N.Y.2d 554, 559, 216 N.Y.S.2d 65, 68, 175 N.E.2d 441, 443 (1961). Furthermore, even when the parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another state's law. *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir.1984) (interpreting New York law). Under either analysis, we hold that New York law must govern the present case.

Nearly all the significant contacts with this dispute are in New York. Resources is a New York corporation. Its principal place of business is in Burnt Hills, New York. Resources placed its orders for gasoline in New York. Cargill delivered the gasoline to Resources in New York. Car-gill's obligation to pay GRT on Resources' purchases is imposed by New York statutory law. Moreover, Cargill and Resources have, without exception, based their briefs and arguments in both the district court and this court on New York law. Clearly, Cargill and Resources expect this case to be decided in accordance with New York law. We therefore will acquiesce in the parties' expectation and will apply New York law.

■ We review *de novo* a district court's decision to grant summary judgment. *Herbert Constr. Co. v. Continental Ins. Co.*, 931 F.2d 989, 993 (2d Cir.1991). It is now a cliché that summary judgment may not be granted if there is a "genuine issue as to any material fact," and the moving party must show that it is "entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The court must resolve any ambiguities and draw all inferences against the moving party. *Schwabenbauer v. Board of Educ.*, 667 F.2d 305, 313 (2d Cir.1981). Even though both parties move for summary judgment and even though they agree that there are no issues of fact, the court may still find that factual issues exist. *Eastman Mach. Co. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). Applying these well-settled principles to this case, we find that the district court incorrectly granted summary judgment.

■ The district court held that the June 19th Letter notified Cargill's distributors that Cargill would charge GRT on all sales after July 1, 1987. Thus, the court held that when Resources, as a Cargill distributor, chose to exercise its option to purchase gasoline from Cargill after July 1, 1987, it agreed to pay Cargill for the GRT on its purchases.

As noted earlier, the approved application constituted the entire contract between the parties. In effect, the district court held that the Letter modified the agreement between Cargill and Resources. It may well be that the Letter legally modified Resources' agreement with Cargill, and thereby obligated Resources to pay GRT on its future purchases. Before

reaching this issue, however, the question whether Resources actually *received* the Letter must be resolved. Drawing all inferences in the light most favorable to Resources, we hold that Cargill has not established that Resources actually received the Letter.

Several Cargill executives were deposed and submitted affidavits supporting Cargill's motion for summary judgment. A review of this testimony fails to flush out any definitive statement that Cargill actually mailed the Letter to Resources. Depositions and affidavits of Resources' executives, on the other hand, contain categorical denials that Resources ever received the Letter.

It is significant that the Letter was addressed "Dear Customer." Cargill has not presented either the district court or this court with a list of the customers who were to receive the Letter. There is, moreover, a serious question as to whether Resources was a "customer" of Cargill on June 19, 1987, the date the Letter was written. As of that date, Resources had so far only established a line of credit with Cargill. Resources had not made any gasoline purchases from Cargill. Resources had not indicated when, if ever, it would purchase gasoline from Cargill. On June 19, 1987, Resources might reasonably be regarded as only a *potential* customer of Cargill. Cargill has not shown that it sent the Letter to both customers and potential customers. It is absolutely essential that Cargill demonstrate that it mailed the crucial Letter to Resources. Yet the record fairly bristles with ambiguities on this question. On a motion for summary judgment, a court must resolve these doubts against Cargill, the moving party.

Although Cargill has failed to demonstrate that it mailed the Letter to Resources, Cargill argues that Resources was, nonetheless, obligated to reimburse Cargill for the GRT on Resources' purchases. It bases this argument on admissions by Resources' president (1) that Resources paid the GRT to all of its other wholesalers; and (2) that Resources would have paid the GRT if Cargill had included GRT on its invoices to Resources. A reasonable jury could disagree with the conclusion that Cargill draws from these admissions, and, hence, summary judgment remains inappropriate.

■■■ Under New York law, a gasoline wholesaler may charge GRT to its distributors only if the contract between the distributor and the wholesaler contains an explicit provision so stating. *See Manhattan & Queens Fuel Corp. v. Village of Rockville Centre,* 126 A.D.2d 523, 524, 510 N.Y.S.2d 646, 648 (2d Dep't 1987), *aff'd* 72 N.Y.2d 824, 530 N.Y.S.2d 540, 526 N.E.2d 31 (1988). What Resources agreed to do in other contracts with other wholesalers is hardly determinative of what Resources and Cargill agreed to do in their own contract. Similarly, an admission by the president of Resources that Resources would have paid the GRT if it appeared on the invoices is not dispositive of the legal question as to whether Resources was contractually bound to reimburse Cargill for the GRT. Indeed, there are simply too many conflicting inferences that might be drawn to resolve this dispute on so blunt an instrument as a motion for summary judgment.

■■■ Finally, since the question of whether Resources owes Cargill any amount for GRT is now open, we hold that Cargill's cross-appeal for attorney's fees is not yet ripe for determination. It is axiomatic that federal courts may not decide hypothetical questions, but may only rule on concrete cases or controversies. U.S. Const. art. III, § 2, cl. 1. A "case or controversy" does not exist when the factual events forming the basis of a claim have not yet occurred. *See New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 833 F.2d 583, 587 (5th Cir.1987). In this case, Cargill's right to recover attorney's fees is contractually dependent on Resources' owing the GRT to Cargill. Our decision to vacate the district court's judgment means that this condition has not yet occurred. Thus, the question whether Resources is obligated to pay Cargill's attorney's fees cannot be determined at present.

## CONCLUSION

We are unable on this record to resolve the issue of whether Resources was required to pay the GRT to Cargill. We can, however, unequivocally state that Cargill has not proven as a matter of law that Resources knew of Cargill's intention to charge GRT to Resources. Accordingly, we vacate the judgment of the district court and remand the action for further proceedings not inconsistent with this opinion.