*53 OPINION OF THE COURT
Minna R. Buck, J.
Petitioner filed a petition on March 23, 1990 alleging that respondent is the father of her child (date of birth July 16, 1974) and seeking an order of filiation and support. Respondent denied the allegations and an order for blood genetic marker tests was issued on May 1, 1990. After results of the tests were received, respondent moved to dismiss the petition pursuant to Family Court Act § 516, on the grounds that a previous order of this court (P-194-78) approved a compromise agreement entered into between the Commissioner of Social Services of Onondaga County (hereinafter DSS) and respondent regarding support of this child. The court reserved decision on the motion, to allow counsel to submit legal memoranda. On the return date for argument on the motion to dismiss, the respondent voluntarily withdrew his denial of paternity and entered an admission, but argued that so much of the petition as sought an order of support should be dismissed. An order of filiation was issued.
After review of counsel’s arguments and having taken notice of all proceedings under P-194-78, the court made a preliminary determination that certain aspects of the instant case raised questions about the constitutionality of Family Court Act § 516. Notice of this preliminary determination was given to the parties and to the Attorney-General of the State of New York, pursuant to Executive Law § 71; decision was further reserved pending appearance of the Attorney-General and hearing further arguments of counsel.
The court now finds that section 516 of the Family Court Act as applied to the facts of this case is unconstitutional, in that petitioner herein was denied due process of law when the 1978 compromise agreement was approved; therefore, the motion to dismiss her petition for support should be denied.
BACKGROUND OF THE CASE
On March 1, 1978, DSS, on behalf of Delora Kingston (petitioner in the instant case), filed a petition alleging that John Vadala (respondent in the instant case) was the father of Ms. Kingston’s son, born July 16, 1974. At the initial appearance, the court’s record of proceedings indicates that Mr. Vadala appeared by counsel, who entered a denial on his behalf; DSS appeared by its counsel and a blood test was ordered. Ms. Kingston, the child and Mr. Vadala submitted to *54 blood tests, and the results reported to the court did not exclude Mr. Vadala as the father. On June 14, 1978, Mr. Vadala appeared with his attorney, and trial was scheduled for July 24, 1978. On that date, Mr. Vadala again appeared with his attorney, and the court was informed that papers were being drawn to reflect a compromise which had been reached; a further adjournment was granted to September 12, 1978.
The court’s file contains a petition bearing a facsimile signature of the DSS Commissioner, alleging that a compromise agreement dated September 12, 1978 settling DSS’ claim had been consented to by “petitioner and respondent,” and requesting the court’s approval of the same. This petition, although returnable on September 12, 1978 (and subsequently approved on that date) was not filed with the court until September 13, 1978; although purporting to incorporate the agreement dated September 12, 1978, it was verified on July 25, 1978(!). The file also contains an undated “Notice of Agreement,” addressed only to the DSS Commissioner, and signed with the facsimile signature of the Commissioner, as well as a copy of the September 12, 1978 agreement (which was sworn to by the respondent before the court on that date). The petition as well as the notice and the agreement itself all named DSS and Mr. Vadala as parties, without any reference to DSS’ assignor, Ms. Kingston. There is nothing in the pleadings under P-194-78 to indicate that Ms. Kingston ever appeared, or was ever given notice of any stage of the proceedings, with the exception of the blood test order.
The order approving the agreement was also signed on September 12, 1978 (the day before the petition was filed). The order recited the court’s finding that the "said agreement makes adequate provision for the support and education of the child and for the expenses of pregnancy, confinement and recovery of the mother”. The agreement settled DSS’ claim for $750. There is no record of any affidavit of service of the order upon Ms. Kingston.
Petitioner’s verified pleadings in the instant case assert that she was never a party to the compromise agreement, and that she communicated her opposition to it to the DSS attorney.
APPLICABLE LAW

Family Court § 516. Agreement or Compromise

"(a) An agreement or compromise made by the mother or by *55 some authorized person on behalf of either the mother or child concerning the support of either is binding upon the mother and child only when the court determines that adequate provision has been made and is fully secured and approves said agreement or compromise.
"(b) No agreement or compromise under this section shall be approved until notice and opportunity to be heard are given to the public welfare official of the county, city or town where the mother resides or the child is found.
"(c) The complete performance of the agreement or compromise, when so approved, bars other remedies of the mother or child for the support and education of the child.”
In Bacon v Bacon (46 NY2d 477), the Court of Appeals in a per curiam opinion rejected the argument that section 516 violated the Equal Protection Clause of both the State and Federal Constitutions, in that illegitimate children were denied the right to seek modification of child support agreements which is available to legitimate children born in wedlock. The lower court had referred to the incentives to putative fathers to enter into agreements for child support, as well as the "significant procedural and substantive obstacles, including the inconclusive nature of scientific knowledge to establish paternity and the heavy burden imposed upon a petitioner in * * * [a contested paternity] proceeding, requiring proof of a clear and convincing nature * * *. This * * * protects the societal interest by ensuring necessary support, thereby preventing the child from becoming a public charge.”* In its affirmance, the Court of Appeals cited this reasoning as one rational and legitimate State interest to be served by the classification under challenge, pointing out that "the interests of the child and mother are protected by the requirement that the agreement be judicially reviewed and approved.” (46 NY2d, supra, at 480.) It was also noted that "since the statute does not mandate or prohibit the inclusion of any particular term in the contract, the parties are free to make the agreement modifiable and thus provide for unforeseen circumstances” (46 NY2d, supra, at 480).
Auleta v Bernardin (113 Misc 2d 526 [Sup Ct, Queens County 1982]) dealt with the enforcement of a compromise agreement entered into under the laws of another State. Citing Bacon (supra), the court noted that such agreements are "in the best interests of an illegitimate child” but also *56 pointed out that the New York statute "preserves the mother’s right to * * * upset a support agreement that is not court approved” (supra, at 530).
In the instant case, the compromise agreement was entered into by DSS, as mother’s assignee, as permitted by section 516 (a). The underlying paternity petition had been initiated by DSS pursuant to Family Court Act § 571, which also addresses the rights of the assignor-mother and the illegitimate child:
"2. The official who brings such a proceeding and the attorney representing him shall be deemed to represent the interests of all persons * * * having an interest in the assignment. The court shall determine * * * whether such person is a necessary party to the proceeding and whether independent counsel need be appointed to represent any party to the assignment or any other person having an interest in the support right. * * *.
"[3] (b) The entry of an order of support under this section shall not preclude an assignor who is no longer receiving public assistance from instituting a support proceeding and receiving a hearing de nova on the amount of support to which the assignor is entitled at that time.” (Emphasis added.)
CONSTITUTIONAL ISSUES CONSIDERED
It can be argued that the 1982 amendment to section 532, permitting the use of human leucocyte antigen (HLA) tissue as positive evidence of paternity (L 1982, ch 695) and the 1986 amendments to section 513 removing the previous statutory distinction between the support rights of legitimate and illegitimate children (L 1986, ch 892, § 25; see, Besharov, Practice Commentaries, McKinney’s Cons Laws NY, Book 29A, § 513, 1991 Pocket Part, at 117) call for a reconsideration of the rationale for rejection of the equal protection argument presented in Bacon (supra). Nevertheless, it is unnecessary to reach this constitutional issue in disposing of the present motion (People v Carcel, 3 NY2d 327).
However, it is not possible to avoid consideration here of the question whether both the child who is the subject of this and the earlier proceeding, as well as the child’s mother, would be deprived of due process of law if, as respondent argues, they are absolutely barred by section 516 from seeking child support now because of the 1978 agreement entered into by respondent and DSS. While it is true that the mother was obligated to, and did in fact, assign to DSS her rights to child *57 support from the person (to be) established as the father as a condition of receiving public assistance (18 NYCRR 369.1 [c] [1]), such assignment extends only to current support rights so long as she continues to receive such assistance (18 NYCRR 369.1 [c] [3]). There is nothing in the applicable law requiring a recipient of AFDC or other public assistance benefits to waive her rights to the benefits available under the portions of section 571 quoted above, including the right to independent counsel during the pendency of the paternity proceeding, and a de nova hearing on child support once the child ceases receiving public assistance. Nor is there anything in section 516 which bars the mother or someone else on behalf of the child (Family Ct Act § 522) from offering evidence to aid the court — in considering a petition for approval of a compromise agreement — in making its determination " 'that adequate provision has been made and is fully secured’ ” (see, Carmen V. v Bruce R., 115 Misc 2d 377, 378), or whether the agreement should be made modifiable under certain circumstances (Bacon v Bacon, supra).
It is clear, however, that retention and exercise of these rights is meaningless unless the assignor-mother is given notice of and an opportunity to be heard in any proceeding for judicial approval of a compromise agreement (Auleta v Bernardin, supra). Section 516 provides explicitly for notice to DSS even where DSS is not a party to the paternity proceeding, presumably to safeguard the State’s interest in preventing the child from becoming a public charge (Bacon v Bacon, supra). No such comparable notice to DSS’ assignor when DSS is the petitioner is mandated by section 516, but to conclude that an assignor-mother is therefore not entitled to such notice would have the effect, in the opinion of this court, of making section 516 unconstitutional on its face (The Constitution of the United States of America: Analysis and Interpretation, at 1145 [US Govt Printing House 1973]; Brody v Brody, 98 AD2d 702).
The court is required to construe a statute, if possible, so as to uphold its constitutionality (McKinney’s Cons Laws of NY, Book 1, Statutes § 150), and to read all sections of the Family Court Act together in order to uphold the general purpose and manifest policy intended by the Legislature (McKinney’s Cons Laws of NY, Book 1, Statutes § 97). We are instructed by the Court of Appeals in Bacon (supra) that the interests of the child and mother are protected by the provision in section 516 that the agreement be judicially reviewed and approved. *58 Surely, in reviewing such agreements made by DSS in its capacity of assignee of the mother, the Family Court must be presumed to be under the statutory mandate of section 571 (2) to determine whether "independent counsel need be appointed to represent” the mother or the child, to consider relevant evidence if available as to the adequacy of the settlement, and to protect mother’s rights to a de nova hearing on child support at some time in the future when the child no longer receives public assistance. In order for the court to do this, elementary considerations of due process require notice to the mother before approval of the compromise is granted. Reading these requirements into section 516 preserves the facial constitutionality of this provision against a due process challenge, and the court therefore construes the section in this manner.
The record before us, however, indicates that these fundamental elements of due process were not observed in this case. On the motion to dismiss, petitioner is entitled to every favorable inference which can be drawn from the pleadings (Terry v County of Orleans, 72 AD2d 925; Law v Kosoff & Sons, 46 AD2d 724); her pleadings assert she opposed the settlement, but were coerced by the DSS attorney into not challenging it. The court’s records show no indication that she ever received notice of the application for judicial approval of that settlement or ever appeared before the court. There is nothing in the file or the order granting approval to show the basis on which the settlement of only $750 for the future support of the then four-year-old child was determined to be adequate.
The agreement on its face is susceptible to questions about its adequacy. Even making allowances for the effects of inflation on the costs of providing for a child’s needs since 1978, the sum approved appears paltry (Carmen V. v Bruce R., supra). Had the petitioner herein been given notice and an opportunity to be heard before the settlement was approved, she might very well have been able to challenge its terms successfully.
Based on the foregoing, the court concludes on the facts of this case that section 516 of the Family Court Act would be unconstitutional if applied to bar petitioner’s right to a de nova hearing on the issue of support.
Accordingly, it is ordered that the respondent’s motion to dismiss is hereby denied; and it is further ordered that respondent shall pay petitioner the sum of $50 per week as and for temporary support of the child, the payments to commence *59 within seven days of service of this order upon his attorney; and it is further ordered that the matter is referred to the Hearing Examiner on the issue of permanent support; counsel are to appear before Hearing Examiner Robert Jenkins, Esq. on March 5,1991 at 9:30 a.m. for further proceedings.

 Bacon v Bacon, 61 AD2d 969, 970.