758 F.2d 1548
 GEORGIA RAILROAD BANK & TRUST COMPANY, Plaintiff-Appellant,
Cross-Appellee,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION and Federal Deposit
Insurance Corporation, as Receiver of First
Augusta Bank & Trust Company,
Defendants-Appellees, Cross-Appellants.
 No. 83-8760.
 United States Court of Appeals,
Eleventh Circuit.
 April 30, 1985.
 
 Charles C. Stebbins, III, Augusta, Ga., for plaintiff-appellant, cross-appellee.
 Myers N. Fisher, Washington, D.C., William A. Trotter, III, Augusta, Ga., for defendants-appellees, cross-appellants.
 Appeals from the United States District Court for the Southern District of Georgia.
 Before VANCE and ANDERSON, Circuit Judges, and PITTMAN*, District Judge.
 R. LANIER ANDERSON, III, Circuit Judge:
 
 
 1
 Georgia Railroad Bank & Trust Company ("Georgia Railroad") appeals from a decision of the district court granting summary judgment to the Federal Deposit Insurance Corporation ("the Corporation") on Count I, holding, inter alia, that Georgia Railroad was not a third-party beneficiary. The Corporation cross-appeals from the district court's decision after a bench trial on Count II, finding an enforceable oral agreement between Georgia Railroad, the Corporation, and the Federal Deposit Insurance Corporation as receiver ("the Receiver")[1] of the insolvent First Augusta Bank & Trust Company ("First Augusta") regarding the accrued interest on a subordinated capital note issued by First Augusta to Georgia Railroad.
 
 I. FACTS AND ISSUES PRESENTED
 
 2
 On May 20, 1977, the Commissioner of Banks for the State of Georgia petitioned the Superior Court of Richmond County to appoint the Federal Deposit Insurance Corporation as receiver of the insolvent First Augusta Bank & Trust Company. This was done, and the Receiver proceeded to liquidate the bank pursuant to a purchase and assumption transaction ("P & A"). Under the P & A, the Receiver entered into an agreement with the assuming bank, First Atlanta, in which First Atlanta purchased the "acceptable assets" and assumed certain liabilities of the insolvent bank. First Atlanta's bid for First Augusta included a premium for First Augusta's value as a going concern. The liabilities assumed by First Atlanta, however, far exceeded the assets purchased, and the net effect required payments from the Receiver to First Atlanta. To fund these payments, the Receiver sold the remaining assets of First Augusta (the "unacceptable assets") to the Corporation. The terms of this arrangement were reflected in two written agreements: the purchase and assumption agreement between the Receiver and First Atlanta (the "P & A agreement") and the "Contract of Sale" between the Receiver and the Corporation.
 
 
 3
 The P & A agreement provided that First Atlanta would assume all the following liabilities:
 
 
 4
 Such other liabilities, including liabilities arising from the purchase of federal funds, as shall have been certified by the Receiver to constitute valid non-contingent balance sheet liabilities of the Bank as of the date of Bank Closing. Such liabilities shall be limited to those which have accrued and become unconditionally fixed as of such date.
 
 
 5
 A schedule of liabilities attached to the P & A agreement listed in greater detail the specific obligations to be assumed by First Atlanta.
 
 
 6
 The Contract of Sale between the Receiver and the Corporation provided that:
 
 
 7
 As consideration for its purchase of the Receiver's interest in the aforesaid assets, the Corporation further agrees that it will assume and discharge any duties owed by the Receiver to the Assuming Bank pursuant to the Purchase and Assumption Agreement which have not been performed as of the date of this Agreement....
 
 
 8
 The instant controversy involves a subordinated capital note in the amount of $350,000 issued by First Augusta to Georgia Railroad. The note was issued pursuant to Ga.Code Ann. Sec. 7-1-419 and was subordinated to the claims of all other depositors and creditors in the event of insolvency. The parties agree that if First Augusta had been liquidated pursuant to a "straight liquidation," Georgia Railroad would not have recovered any sums on the note because creditors with claims senior to that of Georgia Railroad would have consumed all of the available assets. Georgia Railroad argues, however, that under the terms of the P & A agreement and the Contract of Sale, it is entitled to recover.
 
 
 9
 One of the primary purposes of liquidating First Augusta under the P & A arrangement was to insure the continued daily operation of the bank. Thus, the transaction had to be completed before the following business day in order to insure this continuity of operations. First Atlanta presented the Receiver with the highest bid for the insolvent bank. Under the law existing at the time, however, the Receiver had to give Georgia Railroad an opportunity to match this bid. Georgia Railroad declined to do so. Georgia Railroad did state, however, that it objected to the bid procedures. First Atlanta then refused to complete the transaction unless the objection was withdrawn.
 
 
 10
 Georgia Railroad first offered to withdraw its objection if the Receiver would promise to pay the principal on the subordinated capital note. The Receiver refused to do so. Georgia Railroad then inquired as to the accrued interest on the note. Although the precise content of the agreement is in question, the Receiver and the Corporation orally agreed to look into the claim for accrued interest and to pay such claim if it was appropriate to do so. The agreement apparently satisfied Georgia Railroad as it withdrew its objection to the proposed transaction.
 
 
 11
 After examining Georgia Railroad's claim for accrued interest, the Receiver informed Georgia Railroad that the subordination feature of the note prevented repayment of the interest as well as the principal since creditors with claims senior to that of Georgia Railroad had exhausted the available funds.
 
 
 12
 Subsequently, Georgia Railroad filed this action against the Receiver and the Corporation, claiming that it was a third-party beneficiary of the P & A agreement and the Contract of Sale and that both the Receiver and the Corporation breached the terms of the oral agreement by refusing to pay the accrued interest claim. With respect to Count I, the district court granted summary judgment to the Corporation on Georgia Railroad's claim for the principal.[2] A bench trial was conducted on the claim for accrued interest, and the district court found that there was a valid oral agreement between the Receiver, the Corporation, and Georgia Railroad. Accordingly, the district court awarded Georgia Railroad damages for its claim for accrued interest on the note.
 
 
 13
 The issues before us are: (1) whether the district court erred in finding an enforceable oral agreement between Georgia Railroad, the Receiver, and the Corporation; and (2) whether the district court erred in holding that Georgia Railroad was not a third-party beneficiary.
 
 II. THE ACCRUED INTEREST CLAIM
 
 14
 At a bench trial, the district court found an enforceable oral agreement between Georgia Railroad, the Corporation, and the Receiver. The court found that the Corporation and the Receiver orally agreed to pay Georgia Railroad's claim for accrued interest if it was a "valid non-contingent balance sheet liability." The district court then proceeded to interpret the quoted language purely as a matter of law, and in so doing, we hold that the district court applied an erroneous legal standard.
 
 
 15
 In interpreting a contract that is controlled by Georgia law, the rules of contractual construction as expounded by the Georgia courts are properly applicable in federal court. See Boston Ins. Co. v. Gable, 352 F.2d 368 (5th Cir.1965).[3] Under Georgia law, "[t]he cardinal rule of construction is to ascertain the intention of the parties." Ga.Code Ann. Sec. 13-2-3. The courts are to afford greater regard to the clear intent of the parties than to any particular words which they may have used in expressing their intent. Carter v. Marble Products, Inc., 171 Ga. 49, 154 S.E. 891 (1930). However unskillfully prepared a particular instrument or agreement may be, the courts are to discover and give effect to the intent of the parties if possible. Skinner v. Bearden, 77 Ga.App. 325, 48 S.E.2d 574 (1948). Similarly, words in a contract are to be construed in the sense in which they are mutually employed by contracting parties, irrespective of the proper and logical meaning those words might otherwise carry. Brooks v. Folds, 33 Ga.App. 409, 126 S.E. 554 (1925).
 
 
 16
 The existence vel non of an ambiguity is a question of law for the court. Cassville-White Assoc. v. Bartow Assoc., 150 Ga.App. 561, 258 S.E.2d 175 (1979). In the instant case, the term "non-contingent balance sheet liability" is, at the very least, ambiguous. That being the case, it became incumbent upon the district court to apply the "cardinal rule" of contractual construction in Georgia, i.e., to determine the intent of the parties. In order to ascertain that intent, the language of the agreement should be considered in light of all the surrounding circumstances, and the court should place itself as nearly as possible in the situation of the parties in seeking the true meaning and correct application of the contractual language. Aetna Life Ins. Co. v. Padgett, 49 Ga.App. 666, 176 S.E. 702 (1934).
 
 
 17
 We conclude that the district court applied erroneous legal standards in finding that the Receiver had violated an oral agreement to pay the interest obligation. As indicated above, the district court made a fact finding that the Corporation and the Receiver orally agreed to study Georgia Railroad's interest claim and orally agreed to pay it if the interest obligation was a "valid non-contingent balance sheet liability." Instead of ascertaining what the parties intended by the term, "valid non-contingent balance sheet liability," the district court erroneously substituted what it deemed to be the legal meaning of that term.[4] As discussed above, the appropriate inquiry would have been to determine that the term was ambiguous, and then to determine what the parties intended.
 
 
 18
 Ordinarily we would remand to permit the district court to determine in the first instance what the parties intended when they agreed that the Receiver and Corporation would pay the accrued interest if it was determined that the same was a "valid non-contingent balance sheet liability." In this case, however, the only factual issue on remand would involve the determination of what the parties meant by the ambiguous term, and the evidence is clear that the ambiguous term did not include Georgia Railroad's subordinated claim for interest. A contrary holding would be clearly erroneous. There is no dispute in the evidence that the principal amount of Georgia Railroad's debt, $350,000, was not to be certified as a "valid non-contingent balance sheet liability," because of its subordinated status. Georgia Railroad had requested that its principal debt be certified, and that request was expressly rejected because of its subordinated status. This course of dealing between the parties clearly establishes that the ambiguous term was not intended to include subordinated debts, whether interest or principal. Because a contrary holding would be clearly erroneous, we find no need to remand for findings by the district court on this issue.[5] Concluding as we do that the Receiver and the Corporation did not violate the oral agreement, we remand with instructions that the district court enter judgment on this issue in favor of the Receiver and the Corporation.
 
 
 19
 III. GEORGIA RAILROAD AS A THIRD-PARTY BENEFICIARY
 
 
 20
 Georgia Railroad first notes that under the terms of the P & A agreement, the Receiver was obligated to certify "all valid non-contingent balance sheet liabilities" to First Atlanta for payment. Georgia Railroad then points to language in the Contract of Sale between the Receiver and the Corporation which required the Corporation to "assume and discharge any duties owed by the Receiver to the Assuming Bank pursuant to the Purchase and Assumption Agreement." Georgia Railroad argues that it is a third-party beneficiary of these agreements and that the Receiver violated its duty by refusing to certify the subordinated capital note to First Atlanta as a "valid non-contingent balance sheet liability." Allegedly, the Corporation in turn breached its agreement to assume the Receiver's duties under the P & A agreement.
 
 
 21
 Our holding above that the term "valid non-contingent balance sheet liability" did not include Georgia Railroad's subordinated capital note and that a contrary holding would be clearly erroneous also controls the resolution of the third-party beneficiary issue. Under Georgia law, a person cannot be deemed a third-party beneficiary unless it clearly appears from the contract that the contract was intended for the benefit of the third person. Moreover, the mere fact that the third party would benefit from performance of the agreement is not alone sufficient; both parties to the contract must intend that the third person be the beneficiary. Donalson v. Coca Cola Co., 164 Ga.App. 712, 298 S.E.2d 25 (1982); LDH Properties v. Morgan, 145 Ga.App. 132, 243 S.E.2d 278 (1978); Stewart v. Gainesville Glass, 131 Ga.App. 747, 206 S.E.2d 857 (1974), aff'd on other grounds, 233 Ga. 578, 212 S.E.2d 377 (1975). Since it is clear that neither party to the P & A agreement intended for the term "valid non-contingent balance sheet liability" to include a subordinated capital note such as the one held by Georgia Railroad, it follows that neither party intended for Georgia Railroad to be a third-party beneficiary of the contract. Thus, the district court properly granted the Corporation's motion for summary judgment on this issue.
 
 
 22
 For the above-stated reasons, the decision of the district court is
 
 
 23
 AFFIRMED in part and REMANDED.
 
 
 
 *
 Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation
 
 
 [1]
 The terms "the Receiver" and "the Corporation" are used to distinguish the dual roles of the FDIC in the liquidation of First Augusta. The significance of this distinction will be more fully developed below
 
 
 [2]
 This action was originally filed in the Superior Court of Richmond County, Georgia. The Corporation then removed the action to federal district court. In its order granting summary judgment to the Corporation, the district court held that the Corporation was not a proper party defendant as to the Count I claim for principal. On a motion for reconsideration, the district court further held that Georgia Railroad was not a third-party beneficiary of either the P & A agreement or the Contract of Sale. Having dismissed the claim for principal against the Corporation, the district court remanded the claim against the Receiver to state court for lack of federal subject matter jurisdiction under 12 U.S.C. Sec. 1819 (federal courts have no federal question jurisdiction in suits by or against the FDIC in its capacity as receiver of a state-chartered bank). Since we affirm the district court's holding that Georgia Railroad was not a third-party beneficiary, see infra, we express no opinion as to whether the Corporation was a proper party defendant with respect to the Count I claim for principal
 
 
 [3]
 In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Id. at 1209
 
 
 [4]
 Although Georgia Railroad and the district court may well have been correct in concluding that First Augusta's obligation to Georgia Railroad was not "contingent" in a strict legal sense, we need not decide that issue since interpreting the word "contingent" as a matter of law is inappropriate where the parties clearly intended a contrary result
 
 
 [5]
 It might have been more difficult to decide this factual issue without a remand had there been any possibility that the Receiver agreed to pay the interest notwithstanding its subordinated status. However, the district court expressly found, not that the Receiver had entered into an unconditional agreement to pay the interest, but rather that the receiver agreed to study the matter and pay the interest only if it constituted a "valid, non-contingent balance sheet liability." Having concluded that the evidence in this case permits only one interpretation of the meaning of that ambiguous term, a remand is unnecessary