**BIO–SYSTEMS, INC., Plaintiff,**

v.

**BIOWASTE SYSTEMS, INC., Defendant.**

**No. CV 94–1456 (ADS).**

United States District Court,
E.D. New York.

Dec. 17, 1994.

McMillan, Rather, Bennett & Rigano, P.C., Melville, NY (Leslie R. Bennett, of counsel), for plaintiff.

Long, Aldridge & Norman, Atlanta, GA (J. Allen Maines, Terry R. Weiss, of counsel), and Faber & Troy, Local Counsel, Westbury, NY (George M. Faber, of counsel), for defendant.

## MEMORANDUM AND ORDER

SPATT, District Judge:

In this diversity case, the Court is called upon to interpret the modern-day risk allocation features of a contract between two companies involved in the collection and disposal of medical waste. The plaintiff Bio–Systems, Inc. ("Bio–Systems") alleges that the defendant BioWaste Systems, Inc. ("BioWaste") breached a partnership agreement between the parties. Bio–Systems moves pursuant to Fed.R.Civ.P. 56(a) for summary judgment in its favor on the complaint. The complaint seeks a declaration of Bio–Systems' rights under the contract, and specific performance by the defendant of its alleged obligations under the contract. The defendant opposes the plaintiff's motion, and cross-moves for summary judgment in its favor. The parties agree on the facts of this case and do not contend that any material facts are in dispute. Rather, they only dispute the interpretation of certain provisions of the contract.

### BACKGROUND

Prior to 1988, the plaintiff Bio–Systems collected and disposed of medical waste—that is, waste products from hospitals and other medical facilities—in the New York metropolitan area. As part of its operations, Bio–Systems maintained a plant in Farmingdale, New York. In 1987, Bio–Systems contracted with an agent to look for a purchaser of or investor in Bio–System's business. The agent introduced Bio–Systems to Scherer Healthcare, Inc., a subsidiary of which is the defendant BioWaste. Negotiations ensued between Bio–Systems and BioWaste, and in August 1988 the parties entered into a Partnership Agreement (the "agreement" or "contract").

The agreement established a partnership under the laws of the state of Georgia between the parties, for the purpose of developing a collection and disposal system for medical waste. Under the terms of the agreement, the defendant BioWaste owned 60% of the partnership, and the plaintiff Bio–Systems owned 40% of the partnership. The parties agreed that Georgia law would govern the construction and interpretation of the terms and provisions of the contract.

Of particular relevance to this case are the business-risk allocation features of the agreement, which allocate the risk of economic loss between the parties through a system of "put" and "call" options available to the parties under the agreement. As described more fully below, the parties essentially agreed that if by a certain date the partnership's business had not reached a certain level of income, then the plaintiff Bio–Systems could exercise a "put" option granted to it under the terms of the agreement, whereby the defendant BioWaste would be required to purchase the plaintiff's interest in the partnership according to the "put" terms specified in the agreement. On the other hand, if Bio–Systems did not exercise its put option, then the defendant BioWaste could exercise a "call" option granted to it under the terms of the agreement, whereby the plaintiff Bio–Systems would be required to sell its interest in the partnership according to the "call" terms specified in the agreement.

The present controversy centers around Bio–Systems' put right. Essentially, Bio–Systems contends that its put right became validly exercisable under the terms of the contract on November 30, 1993, but that BioWaste has refused to perform its obligation to purchase Bio–Systems' interest in the partnership. BioWaste, on the other hand, contends that the plaintiff's put right was not exercisable on November 30, 1993, but has been indefinitely postponed under the terms of the contract, and that BioWaste, therefore, need not perform its end of the bargain.

*The Relevant Contract Provisions.*

Under the terms of the agreement, BioWaste was potentially obligated to provide the partnership with loans to help fund the development of additional waste processing plants. As mentioned previously, the partnership had one plant in operation at Farmingdale, New York ("Plant 1"). The loans for additional plants were defined in the agreement as the "Plant 2" loan, "Plant 3" loan and "Plant 4" loan. BioWaste's obligation to make these loans, however, was conditioned on the success of Plant 1. Section 3.3.3 of the agreement, in relevant part, define's the defendant's loan obligation as follows:

> BioWaste shall be obligated to provide the Plant 2 Loan only when Plant 1 has attained the Plant 2 Target Date. The Plant 2 Target Date shall be met when Plant 1 has generated (i) Two Million Seven Hundred Thousand Dollars ($2,700,000) in average annualized Gross Plant Revenue and (ii) One Million Three Hundred Thousand Dollars ($1,300,000) in average annualized Net Plant Revenue during a period of three (3) consecutive months which period shall end no later than eighteen months from the month in which the Plant 1 Opening Date occurs.

The "Plant 1 Opening Date" is defined in the agreement as November 30, 1988. Both Parties concede that the Plant 2 Target Date never occurred, and significantly both sides agree in their Rule 3(g) statements that Biowaste did not become *obligated* to provide the Plant 2 Loan under section 3.3.3.

Pursuant to the second paragraph of section 3.3 of the agreement, however, BioWaste's loan obligation under section 3.3.3 of the agreement could be delayed under the following circumstances:

> Notwithstanding anything to the contrary contained herein, BioWaste shall have no obligation to make the . . . Plant 2 Loan, Plant 3 Loan or Plant 4 Loan, as set forth below, until such time as all permits and/or licenses with respect to the partnership's business and Plant 1 that are required by applicable federal, state and local law shall have been obtained.

Bio–System's "put" right was exercisable upon the "Put Date." Section 1.10.18 of the agreement defined "Put" as "Bio–System's right to require BioWaste to purchase its

interest pursuant to section 9.3, below, effective as of the Put Date." Section 1.10.20 defined the "Put Date" as occurring on the fifth anniversary of the Plant 1 Opening Date, namely November 30, 1993, subject to being extended on account of a delay in the partnership's obtaining of the necessary permits and licenses under section 3.3:

> "Put Date" shall refer to the fifth (5th) anniversary of the Plant 1 Opening Date; provided, however, that if BioWaste's obligation to make the Plant 2 Loan pursuant to Section 3.3.3 is delayed pursuant to the second paragraph of Section 3.3, then the Put Date shall be delayed by a like number of days.

According to the plaintiff and as the parties concede, because the Plant 2 Target Date never occurred BioWaste never became obligated under section 3.3.3 to provide the Plant 2 Loan. Therefore, Bio–Systems contends that there could be no delay of BioWaste's Plant 2 Loan obligation under the second paragraph of section 3.3, and accordingly the Put Date could not be extended under section 1.10.20 beyond the fifth anniversary of the Plant 1 Opening Date, namely November 30, 1993.

## COMPLAINT AND PRESENT MOTIONS

Bio–Systems alleges that in December 1991, when it asked BioWaste what the parties' options were under the agreement, the president of BioWaste responded by stating that Bio–Systems had the right to request to be bought-out on November 30, 1993, and that BioWaste had the right to buy-out Bio–Systems on December 29, 1993. A year later, on December 3, 1992, Bio–Systems alleges it notified BioWaste of its intention to exercise its put option on the Put Date, November 30, 1993, but that at that time BioWaste contended that the Put Date had been indefinitely extended under the terms of section 3.3. The parties corresponded some more concerning this matter, and Bio–Systems again gave notice on November 26, 1993 that it was going to exercise its put option on November 30, 1993. Bio–Systems alleges that despite its notice and the contractual terms, BioWaste has not performed

its end of the option to purchase Bio–Systems' interest in the partnership.

On March 29, 1994 Bio–Systems commenced this action. The complaint seeks (1) a declaratory judgment that the "Put Date" under the agreement was exercisable on November 30, 1993, and (2) an order directing BioWaste to comply with the various contractual terms involving the purchase of the plaintiff's partnership interest, including directing a sale of the plaintiff's interest within thirty days of a determination of the "Put Amount", as that term is defined in the agreement.

The plaintiff now moves for summary judgment in its favor on the complaint, pursuant to Fed.R.Civ.P. 56(a). According to the plaintiff, there are no material facts in dispute and the unambiguous language of the contract provides that the Put Date was never extended beyond November 30, 1993. The plaintiff contends that as a matter of law it is entitled to exercise its put option and require BioWaste to purchase the plaintiff's interest in the partnership.

On the other hand, the defendant BioWaste moves for summary judgment in its favor on the complaint, pursuant to Fed. R.Civ.P. 56(b). BioWaste contends that although its original obligation to purchase the plaintiff's interest in the partnership became effective as of the November 30, 1993 Put Date, that date was (1) indefinitely extended because BioWaste never became obligated to make the Plant 2 Loan, and/or (2) was extended until, at the earliest, June 13, 1995 because of delays in obtaining permits and licenses. According to BioWaste, the Court must be guided in its interpretation of the contract by the intention of the parties. BioWaste contends that the parties intended for the Put Date to be extended beyond November 30, 1993.

## DISCUSSION

### Summary Judgment Standard

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990), and the

movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir.1990). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Rattner v. Netburn,* 930 F.2d 204 (2d Cir.1991). However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Western World,* 922 F.2d at 121.

Finally, when determining a motion for summary judgment, the Court is charged with the function of "issue finding", not "issue resolution." *Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership,* 912 F.2d 23, 27 (2d Cir.1990).

In this case, both parties agree that there are no material facts in dispute. The parties contend that the resolution of the dispute before the Court can be appropriately decided as a matter of law by summary judgment, because it involves the interpretation of the agreement between the parties.

1. *Choice of Law.*

■ A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits, *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), including the state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 46 n. 6 (2d Cir.1993).

■ In the absence of a violation of a fundamental state policy, New York courts generally defer to the choice of law made by the parties to a contract. *Cargill, Inc. v. Charles Kowsky Resources, Inc.,* 949 F.2d 51, 55 (2d Cir.1991); *Woodling v. Garrett Corp.,* 813 F.2d 543, 551 (2d Cir.1987) (citing New York cases). However, New York law allows a court to disregard the parties' choice of law when the "most significant contacts" with the matter in dispute are in another state. *Cargill,* 949 F.2d at 55 (citing *Haag v. Barnes,* 9 N.Y.2d 554, 559, 216 N.Y.S.2d 65, 68, 175 N.E.2d 441, 444 (1961)). *See also Progressive Casualty,* 991 F.2d at 46 n. 6 ("New York courts apply an 'interest analysis' to choice of law issues involving contractual disputes, and therefore 'the law of the jurisdiction having the greatest interest in the litigation will be applied.' ") (quoting *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969)).

■ In conducting an "interest analysis" for choice of law purposes, the Court looks to such factors as the place of contracting, where the contract was negotiated, where the contract was to be performed, the location of the subject matter of the contract, and the domicile and place of business of the parties. *Wm. Passalacqua Builders v. Resnick Developers,* 933 F.2d 131, 137 (2d Cir.1991).

■ Here, the parties chose that the law of the State of Georgia will govern the interpretation of their partnership contract. Neither of the parties disputes that Georgia law should govern the contract. Further, no fundamental New York State policy is violated by the choice of Georgia law to govern the contract. Finally, the partnership established by the contract was a Georgia partnership, and the defendant BioWaste—who was the managing partner of the business—was located in Georgia. Accordingly, the Court

will honor the parties' agreement and apply Georgia Law to the dispute.

### 2. *Georgia Law of Contract.*

■ Under Georgia law, "[t]he interpretation of the language in [a] contract is generally a question of law for the court unless it is so ambiguous that the ambiguity can not be resolved by the ordinary rules of construction." *Club Associates v. Consolidated Capital Realty Investors,* 951 F.2d 1223, 1229 (11th Cir.1992) (quoting *Hardman v. Dahlonega–Lumpkin County Chamber of Commerce,* 238 Ga. 551, 553, 233 S.E.2d 753, 755 (1977)). *See also Kohlheim v. Glynn County,* 915 F.2d 1473, 1480 (11th Cir.1990) (interpretation of a contract is a question of law for the Court that is properly subject to disposition by a motion for summary judgment); *Sims' Crane Service, Inc. v. Reliance Ins. Co.,* 514 F.Supp. 1033 (S.D.Ga.1981), *aff'd* 667 F.2d 30 (11th Cir.1982).

■ Whether a given contract that is governed by Georgia law is ambiguous is also a matter to be determined by the court. *Club Associates,* 951 F.2d at 1230 (citing *Stern's Gallery of Gifts, Inc. v. Corporate Property Investors, Inc.,* 176 Ga.App. 586, 593, 337 S.E.2d 29, 35 (1985); *Georgia R.R. Bank & Trust v. Federal Deposit Insurance Corp.,* 758 F.2d 1548, 1551 (11th Cir.1985).

■ In construing a contract under Georgia law "the cardinal rule of construction is to ascertain the intention of the parties. The courts are to afford greater regard to the clear intent of the parties than to any particular words which they may have used in expressing their intent." *Georgia R.R. Bank & Trust,* 758 F.2d at 1551 (citing Georgia law). However, notwithstanding this cardinal rule of construction, "[w]here the language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible." *Club Associates,* 951 F.2d at 1230 (quoting *Stern's Gallery,* 176 Ga.App. at 593, 337 S.E.2d at 35). Thus, under Georgia law, "contract language that is capable of only one logical interpretation is accorded its literal meaning, but terms that are susceptible of more than one reasonable interpretation are uncertain of meaning or expression and, thus, ambiguous." *Club Associates,* 951 F.2d at 1230 (citing *United States Fidelity & Guaranty Co. v. Gillis,* 164 Ga.App. 278, 281, 296 S.E.2d 253, 255 (1982).

Significantly, "merely because *the parties* disagree upon the meaning of contract terms will not transform the issue of law into an issue of fact," *Club Associates,* 951 F.2d at 1230 (emphasis in original), and "interpretation of unambiguous contract terms is for the court solely." *Id.*

In this Court's view, the contractual provisions governing the "Put Date" are clear and unambiguous and, accordingly under the principles of Georgia law explained above, do not require further construction or inquiry into the parties intent.

■ Section 1.10.20 of the contract provides that Put Date "shall refer to the fifth (5th) anniversary of the Plant 1 Opening Date [namely, November 30, 1993]; provided, however, that if BioWaste's obligation to make the Plant 2 Loan pursuant to Section 3.3.3 is delayed pursuant to the second paragraph of Section 3.3, then the Put Date shall be delayed by a like number of days."

Both sides agree that BioWaste's obligation to make the Plant 2 Loan never came into effect because ·the Plant 2 Target Date was not met; that is, the requisite amount of income from Plant 1 was not generated by the time specified in section 3.3.3, namely eighteen months from November 30, 1988 or June, 1990. Therefore, there not being any obligation for BioWaste to make the loan under section 3.3.3, there was no "obligation" that could have been delayed pursuant to the second paragraph of 3.3, which provides for delaying BioWaste's obligation to make the loan in the event more time is needed to get permits and/or licenses with respect to the partnership's business and Plant 1. That being the case, the Put Date could not have been extended beyond November 30, 1993 by the number of days equal to the period of delay needed to obtain the requisite permits.

BioWaste's contention that the Put Date was indefinitely extended because BioWaste never became obligated to make the Plant 2 Loan is contrary to the clear language of the

**54**

contract. The definition of Put Date provides that the Put Date shall be extended only in the event BioWaste's obligation to make the Plant 2 Loan pursuant to Section 3.3.3 is delayed pursuant to the second paragraph of Section 3.3, namely, is delayed because BioWaste requires more time to get the necessary permits. The definition of Put Date does not say, or can even be reasonably construed to say, that the Put Date can be indefinitely extended in the event BioWaste never becomes obligated to make the loan on account of the Plant 2 Target Date not being met. Indeed, in this Court's view such a construction of the contract is contrary to the risk-allocation intended by the parties, because it prevents Bio–Systems from ever exercising its put right in the event the business venture fails to generate the required income.

Moreover, BioWaste's contention that the Put Date was extended by eighteen months until June 13, 1995, because the required permits and licenses for the business and Plant 1 were not obtained until June 13, 1990 is without merit. Since the income agreed to by the parties was not being generated by June, 1990, and thus the Plant 2 Target Date was not met, the fact that the required permits and licenses were not obtained until that time is irrelevant. Significantly, BioWaste did not have any obligation to make the Plant 2 loan by June, 1990 and the failure to obtain the permits by that time does not independently operate under the terms of the agreement to extend the Put Date.

Accordingly, the Court declares that the "Put Date" under the agreement was exercisable on November 30, 1993.

Having reviewed the documents submitted by the parties, having heard oral argument on December 16, 1994, and for the reasons stated herein, it is hereby

**ORDERED,** that the plaintiff's motion pursuant to Fed.R.Civ.P. 56(a) for summary judgment in its favor on the complaint is granted in its entirety; it is further

**ORDERED,** that the defendant's motion pursuant to Fed.R.Civ.P. 56(b) for summary judgment in its favor on the complaint is denied; and it is further

**ORDERED,** that the defendant BioWaste is directed to comply with the various contractual terms involving the purchase of the plaintiff's partnership interest, and that a sale of the plaintiff's interest in the partnership is to take place within thirty days of a determination of the Put Amount, according to and as provided by the terms of the contract.

The Clerk of the Court is advised that this action closed the case.

**SO ORDERED.**